### In re SWAIN.

[Cite as *In re Swain* (1991), 68 Ohio App.3d 737.]

Court of Appeals of Ohio,
Portage County.

No. 89–P–2067.

Decided Jan. 14, 1991.

*Robert W. Berger,* for appellant Melinda Swain.

*Francis Ricciardi,* for appellee David Swain.

JOSEPH E. MAHONEY, Judge.

This is an appeal by Melinda Swain, mother, from the judgment of the Portage County Court of Common Pleas, Juvenile Division, granting a change

of custody of the parties' minor child, David Allen Swain, to the child's father, David Swain.

The background relating to the custody of the child is as follows:

Appellant and David Swain were divorced on September 16, 1985. Custody of the couple's minor child, David Allen Swain, was awarded to appellant subject to the visitation rights of the father.[1] The father was ordered to pay support of $50 per week plus poundage.[2]

On March 2, 1987, the Portage County Department of Human Services ("DHS") filed a complaint alleging that the child was dependent and that temporary custody be given to DHS. The court adjudicated the child as dependent and placed him in temporary custody with DHS.[3] On April 1, 1987, the court granted physical custody to the father and ordered that a reunification plan be filed. A comprehensive plan was subsequently filed on June 23, 1987.

Appellant and her boyfriend attended and completed parenting classes where they were taught the alternative forms of discipline to corporal punishment.

On March 1, 1988, DHS filed a motion to terminate custody, stating that the reunification plan had been completed. On March 28, 1988, the father filed a motion opposing the return of custody. After conducting a full hearing, the trial court awarded legal and physical custody of the child to appellant.[4]

On September 15, 1988, appellant disciplined the child for calling another neighborhood child "an asshole" by making him sit on the couch. The child had a fit and threw the sofa cushions all over the room. Appellant then ordered him to go to his room. The appellant's live-in boyfriend, Mark Bartholdi, came home from work and went to talk to the child about the incident. The boyfriend slapped the child once across the right side of the

---

1. The court ordered that the father should not visit the child when he has been drinking and shall not have overnight visitation with the child until he establishes a suitable place to live and take the child on visitation.

2. The record indicates that the father has been summoned for contempt of court for refusing to pay support.

3. The mother had committed an act of child abuse in February 1987 which prompted the complaint for the adjudication of dependency. The mother's boyfriend, Mark Bartholdi, had severely spanked the child in 1986. The incident was reported by the maternal grandfather to the Windham Police, but no complaint was ever filed.

4. By agreement, the father had returned the child to the mother prior to the court's formal ruling.

face because the child called him an "asshole." Appellant was not present and did not know the boyfriend was going to slap the child.

The child went to school the next day. It was not until he was ready to go home that a teacher noticed that the side of his face was red. DHS was called and a social worker, Tracy Stamp, and a female from the sheriff's department were dispatched to appellant's residence to investigate. The child confirmed to the social worker that Mark had slapped him because he said the dirty word, "asshole." The social worker decided that the incident did not merit removal of the child from the appellant's home. The social worker later testified that redness on the right side of the face looked like a sunburn. The sheriff's department did not press any charges or take any action.

Appellant and her boyfriend were supposed to take the child to DHS the following Monday morning to discuss the incident further.

When the natural father showed up to pick up the child for his weekend visit, appellant told him about the slap and informed him of the Monday morning meeting. Subsequently, the father refused to return the child and on September 19, 1988, he filed a "Motion for a Change of Custody, Temporary Custody and Support" wherein he alleged that the child was a victim of abuse. The court granted the motion and issued an *ex parte* order transferring temporary legal custody to the father.

On September 22, 1988, appellant filed a motion to vacate the *ex parte* custody order. She subsequently filed a motion for temporary custody on November 3, 1988. Upon the father's motion, the hearing was continued from December 22, 1988 and was eventually conducted on February 1 and 2, 1989.

On February 13, 1989, the referee filed his report wherein he concluded that, in the best interest of the child, legal custody should be awarded to the father. On March 1, 1989, appellant filed objections to the referee's report, pursuant to Juv.R. 40, and moved the court to provide a transcript of the proceedings and the exhibits admitted into evidence. The objections raised were to specific factual inaccuracies and omissions in the referee's report and challenged the recommendation on the weight of the evidence.

On March 6, 1989, the court summarily approved the referee's report without specifically addressing any of the objections or ruling on the motion to provide a transcript of the proceedings.

Appellant has filed a timely notice of appeal and now presents the following assignments of error for our review:

"1. The trial court erred to the prejudice of the appellant-custodial mother by adopting the referee's error-ridden report modifying custody without

hearing on the custodial mother's objections to the referee's report or independent review of the report.

"2. The trial court erred to the prejudice of the appellant-mother when it adopted the referee's report which in effect gave the five-year-old child an election.

"3. The trial court erred to the prejudice of the mother-appellant by not rejecting the referee's report that contained many prejudicial errors on its face and could not be upheld by the weight of the evidence."

In the first assignment of error, appellant argues that the court failed to conduct an independent analysis of the legal issues but merely rubber-stamped the referee's findings via a form journal entry.[5] Appellant contends that the journal entry itself, which provides, "This matter came on for *hearing* on objections to the Referee's Report * * * " (emphasis added), is factually incorrect because no hearing was conducted on the objections.

The term "hearing" has been liberally construed and may be limited to a review of the record without oral argument. See *Ohio Motor Vehicle Dealers Bd. v. Central Cadillac Co.* (1984), 14 Ohio St.3d 64, 67, 14 OBR 456, 459, 471 N.E.2d 488, 492. Moreover, the appellant did not request an oral hearing and Juv.R. 40 does not mandate one.

Juv.R. 40(D), which is modeled after Civ.R. 53, provides in pertinent part:

"(1) *Contents and filing.* The referee shall prepare a report upon the matters submitted by the order of reference or otherwise. The referee shall file the report with the judge and forthwith provide copies to the parties. The report shall set forth the findings of the referee upon the case submitted, together with a recommendation as to the judgment or order to be made in the case in question, but the referee shall file with the report a transcript of the proceedings and of the evidence only if the court so directs.

"(2) *Objections to report.* A party may, within fourteen days of the filing of the report, serve and file written objections to the referee's report. Such objections shall be considered a motion. Objections shall be specific and state with particularity the grounds therefor. Upon consideration of the objections the court may: adopt, reject or modify the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself.

" * * *

"(5) *When Effective.* The report of a referee shall be effective and binding only when approved and entered as a matter of record by the court. The

---

5. The appellee did not file a brief and is not participating in this appeal.

referee's findings of fact must be sufficient for the court to make an independent analysis of the issues and to apply appropriate rules of law in reaching a judgment order. The court may adopt the referee's recommendations about appropriate conclusions of law and the appropriate resolution of any issues. However, the court shall determine whether there is any error of law or other defect on the face of the referee's report even if no party objects to such an error or defect. The court shall enter its own judgment on the issues submitted for action and report by the referee.

"(6) *Factual findings.* A party may not assign as error the court's adoption of a referee's finding of fact unless an objection to that finding is contained in that party's written objections to the referee's report. *The court may adopt any finding of fact in the referee's report without further consideration unless the party who objects to that finding supports that objection with a copy of all relevant portions of the transcript from the referee's hearing or an affidavit about evidence submitted to the referee if no transcript is available.* In deciding whether to adopt a referee's finding of fact, the court may disregard any evidence which was not submitted to the referee unless the complaining party demonstrates that with reasonable diligence he or she could not have discovered and produced that evidence for the referee's consideration." (Emphasis added.)

A review of the record reveals that the referee failed to file a report with findings and recommendations as contemplated under Juv.R. 40(D)(1). Instead, the referee filed a journal entry, which was worded as a judgment of the court. The entry provided a means for the trial court to adopt it as its own judgment by affixing its signature below the referee's.

Referee's reports in this form have been widely condemned as a usurpation of the judicial "decision making" power and an indicia of "rubber stamping." *Logue v. Wilson* (1975), 45 Ohio App.2d 132, 74 O.O.2d 140, 341 N.E.2d 641; *Ivywood Apartments v. Bennett* (1976), 51 Ohio App.2d 209, 5 O.O.3d 351, 367 N.E.2d 1205; *Nolte v. Nolte* (1978), 60 Ohio App.2d 227, 14 O.O.3d 215, 396 N.E.2d 807; *Normandy Place Associates v. Beyer* (1982), 2 Ohio St.3d 102, 2 OBR 653, 443 N.E.2d 161. For an overview, see Refereeing the Referees (1986), 19 Akron L.Rev. 579.

The trial court did not sign the referee's journal entry but filed its own. Without addressing any of appellant's objections or ruling on her request for a transcript, the trial court stated that it had reviewed the objections and the referee's findings and recommendations and that it adopts the latter as its own.

It is well settled that a referee's report must include sufficient information to enable the trial judge to make an independent determination of the

legal issues and render its own judgment. Juv.R. 40(D)(5); *Logue v. Wilson, supra; Nolte v. Nolte, supra; White v. White* (Nov. 17, 1989), Trumbull App. No. 88–T–4116, unreported, 1989 WL 140181.

If the report is insufficient to permit the court to resolve the legal issues raised by the objections or "the objection challenges the weight of the evidence, the court will, of necessity, need to supplement the report by referring to a transcript of testimony, hearing additional evidence, returning the report to the referee with instructions, or hearing the matter itself." *Zacek v. Zacek* (1983), 11 Ohio App.3d 91, 11 OBR 143, 463 N.E.2d 391.

Juv.R. 40(D) and Civ.R. 53 were both amended effective July 1, 1985. Both prior and subsequent to the amendments, the respective rules placed the burden of providing a transcript on the party who objects to the referee's findings. Juv.R. 40(D)(6); Civ.R. 53(E)(6).

In *Purpura v. Purpura* (1986), 33 Ohio App.3d 237, 239, 515 N.E.2d 27, 29, the court ruled that a trial court may properly adopt the referee's factual findings without further consideration where the party objecting to the report fails to provide a transcript or other evidentiary material to contest the findings. More recently in *Proctor v. Proctor* (1988), 48 Ohio App.3d 55, 548 N.E.2d 287, the court analyzed and interpreted the amended Civ.R. 53(E)(5) and (6). The court held that under the amended Civ.R. 53(E)(6), a party may not assign as error the trial court's adoption of a referee's finding of fact unless an objection to that finding is made in the party's written objections to the referee's report. Citing *Purpura,* the court further held that " * * * unlike the failure to object at all, the mere failure to submit a transcript or affidavit in support of an otherwise properly made objection to a referee's report as provided in Civ.R. 53(E)(6) does not preclude appellate review of the trial court's adoption of a referee's finding of fact. However, in the absence of such transcript or affidavit, appellate review of the trial court's adoption of that finding of fact will be limited to whether the trial court's adoption of that finding constituted an abuse of discretion." *Id.,* 48 Ohio App.3d at 63, 548 N.E.2d at 288.

In the case *sub judice,* the appellant's objections challenged the weight of the evidence and appellant specifically requested a transcript of the proceedings. The trial court did not act upon the request and effectively denied it without any comment. The present case is analogous to *Eash v. Eash* (1984), 14 Ohio App.3d 298, 14 OBR 355, 471 N.E.2d 174, where the objecting party also included a request for a transcript in her objections which were based on the manifest weight of the evidence. The *Eash* court held that:

"While the burden is on the objecting party to provide a transcript of the proceedings before the referee, Civ.R. 53 does not outline the procedure for obtaining the transcript. The court can order the transcript (see Civ.R. 53[E][1]), and in the absence of any specific procedure we conclude that it is not improper for the objecting party to include a request for the transcript in her objections to the referee's report. The decision to order the transcript lies within the sound discretion of the trial court and may be conditioned on the performance of such prerequisites as the court deems necessary, such as guaranteeing the costs.

"A transcript of proceedings is not required for the court to rule on the merits of all objections, but in this case plaintiff's objections are based on the manifest weight of the evidence. Resolution of manifest weight questions requires a review of the transcript, and the court's refusal to grant a request, subject to such conditions as the court may wish to impose, would be an abuse of discretion absent some significant articulated reason supporting the refusal. In this case the court did not act upon plaintiff's request, in effect denying the request without stating any reason. We conclude that this was an abuse of discretion, and find this assignment of error well-taken." *Id.*, 14 Ohio App.3d at 298–299, 14 OBR at 355–356, 471 N.E.2d at 175–176.

We find the reasoning in *Eash* compelling and applicable to the instant case. Both *Eash* and this case are distinguishable from *Purpura* and *Proctor* on their facts. Unlike in *Eash* and the case *sub judice*, in *Proctor* and *Purpura*, no specific request for a transcript was made.

Juv.R. 40(D)(1) and (2) indicate that the trial court may order the referee to file a transcript, may return the report to the referee with instructions, or may hear the matter itself. In light of these provisions, the fact that the referee's report was filed as a journal entry, which is indicia of "rubber stamping," and the fact that a transcript is necessary to resolve manifest weight questions, we agree with our colleagues in *Eash* that the court's refusal to grant the request for a transcript, upon which the court could have placed conditions, is an abuse of discretion when the court fails to give a substantial reason for the refusal.

Accordingly, appellant's first assignment of error is well taken.

The second and third assignments also challenge the referee's report based on the manifest weight of the evidence. Since the trial court did not consider the transcript of the proceeding which is now before us, we cannot consider these assignments of error on the merits. See *Eash v. Eash, supra*, 14 Ohio App.3d at 299, 14 OBR at 356, 471 N.E.2d at 176.

For the foregoing reasons, the judgment of the trial court is reversed and this matter is remanded to the trial court for its consideration of the transcript of proceedings before the referee and for further review of appellant's objections based on the weight of the evidence.

*Judgment accordingly.*

FORD, J., concurs in judgment only.

CHRISTLEY, P.J., dissents.

CHRISTLEY, Presiding Judge, dissenting.

I dissent from the lead opinion in two respects: one, although the referee's report was labeled as a "journal entry," it was, in substance, a comprehensive report with extensive findings of fact. It is evident that the judge treated it as such as his overruling of the objections and adoption of the report were done by separate entry. However, I would note that his entry of approval is inadequate as it does not separately state the ruling of the court, *i.e.,* he does not independently enter judgment awarding custody to the father. Juv.R. 40(D)(6). Therefore, this is not yet a final appealable order and I would remand to rectify that deficiency. Two, even if this could be considered a final appealable order, I believe Juv.R. 40(D)(6) as revised in 1985 clearly puts the burden on the objecting party to provide either a transcript or affidavit of evidence if no transcript is available. *Eash v. Eash, supra,* preceded and is no longer applicable on this issue. The instant case did not allege indigency; therefore, the request for a transcript had to be made directly to the court reporter per R.C. 2301.23 and 2151.35.

Therefore, I would remand for a proper final entry and then affirm.