OPINION
{¶ 1} Appellant, Amanda Lilly ("Amanda"), appeals the July 1, 2004 judgment entry of the Ashtabula County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of her three-year-old child, Angel Goff ("Angel"), to the Ashtabula County Children Services Board ("Ashtabula Children Services"). For the following reasons, we affirm the juvenile court's decision.
 {¶ 2} Angel was born on October 15, 2001. At this time, Amanda was seventeen years old and living with her mother, Grace Goff ("Grace"), and step-father, Leonard Goff ("Leonard"), at 452 East Main Street in Andover, Ohio. Amanda did not receive any prenatal care for Angel because she did not realize that she was pregnant. On January 31, 2002, Ashtabula Children Services removed Angel from the home after a complaint was received concerning Angel's health and the conditions existing in the home. Jonathan W. Winer ("Winer") was appointed Angel's guardian ad litem. Thereafter, Ashtabula Children Services filed a neglect complaint on Angel's behalf pursuant to R.C. 2151.03(A)(2).
 {¶ 3} On April 24, 2002, Angel was found to be neglected and Ashtabula Children Services was given temporary custody of Angel. The trial court found that Grace's home was neither sanitary nor safe; that Grace and Amanda were only partially meeting Angel's medical needs; and that Angel was underweight and suffering from a "failure to thrive." Specifically, Amanda had failed to fill a prescription for soy formula, prescribed four to five weeks earlier because Angel could not tolerate her regular formula. Amanda also failed to take Angel to a specialist, as recommended, for failure to thrive; failed to take Angel to an orthopedic surgeon to evaluate the curvature in one of Angel''s legs; and failed to obtain prescribed orthopedic shoes for Angel.[1] The decision adjudicating Angel a neglected child was upheld by this court in In reGoff, 2002-A-0038, 2003-Ohio-1744.
 {¶ 4} In February 2002, a case plan was developed with the goal of returning Angel to Amanda's custody. Subsequent case plans were filed with the court through April 2003. The case plans identified the following areas of concern: that Amanda did not possess adequate parenting skills and knowledge of child development; that Amanda did not have a sufficient income to support herself and Angel; and that Amanda did not have a safe and sanitary home for herself and Angel. To address these concerns, Amanda was required to demonstrate greater parenting and independent living skills. Specific goals were that Amanda would complete a parenting class; obtain her high school diploma; obtain her driver's license and transportation; maintain an income through regular employment and/or social service benefits; maintain safe and sanitary housing; complete a psychological exam; and cooperate in establishing Angel's paternity.
 {¶ 5} Amanda subsequently obtained her diploma from Pymatuning Valley High School, a driver's license, and an automobile.
 {¶ 6} In January 2003, Amanda obtained employment at Burger King in Kingsville. In August 2003, Amanda was terminated for not showing up for work. Thereafter, Amanda was working for Lesko Enterprises in Albion, Pennsylvania. As of October 21, 2003, the date of Amanda's testimony at the permanent custody hearing, Amanda had not been to work at Lesko for two weeks because of illness and the desire to seek a better paying job.
 {¶ 7} Sometime after Angel's removal, Amanda, Grace and Leonard moved to a rental house at 4434 Stanhope Kelloggsville Road. Amanda's caseworker, Carrie Colby ("Colby"), visited the Stanhope Kelloggsville Road house in October 2002. She observed numerous safety concerns including: no central heat, plumbing and electrical wiring in need of repair, and a burned-out second story that was uninhabitable. Winer reported that Amanda, Grace and Leonard "appear[ed] to be in a state of emotional turmoil at most times" and that the home would not be "a safe, healthy, nurturing environment for Angel's permanent residency." Amanda never provided Ashtabula Children Services with requested documentation from the building inspector, health department and fire chief verifying that the Stanhope Kelloggsville Road home was safe.
 {¶ 8} Amanda, Grace and Leonard moved out of the Stanhope Kelloggsville Road home in September 2003, after learning that foreclosure proceedings had been initiated against the property. Grace and Leonard moved to another rental property on Stanhope Kelloggsville Road. Amanda moved in with her boyfriend of two months, her boyfriend's sister, the sister's fiancée, and the sister's eight-year-old daughter in a rental home in Springsboro, Pennsylvania. Amanda was unable to recall the exact address of this residence. Neither her caseworker nor the guardian ad litem has been to the Springsboro residence.
 {¶ 9} In the Spring of 2002, Amanda completed six sessions of parenting classes and received a certificate from Ashtabula Children Services. Colby, however, was not satisfied that Amanda had made adequate progress in improving her parenting skills. In particular, Colby felt that Amanda's knowledge of child development had not improved and that Amanda did not fully comprehend the implications of Angel's medical condition. Amanda testified that she did not learn anything from the classes that she had not already learned in high school parenting classes. Amanda was ordered by the court to retake the parenting classes.
 {¶ 10} In March 2002, Amanda was evaluated by psychologist Steven Kanter ("Kanter"). Kanter diagnosed Amanda with chronic dependent personality disorder, which handicaps a person's capacity for independent decision-making. Kanter testified that Amanda's condition would interfere with her ability to parent a child.
 {¶ 11} Ashtabula Children Services referred Amanda to Northcoast Services for counseling. Between May 2002 and August 2003, therapist Susan Krieg ("Krieg") worked regularly with Amanda to reduce her depression and anxiety and to develop her independent living skills. Krieg believed that Amanda was making progress toward becoming more independent. Krieg testified that, with the proper support services, Amanda would be a fit parent for Angel.
 {¶ 12} In June 2003, Krieg referred Amanda to Sheryl Coyne ("Coyne"), who assists clients of Northcoast Services to access community support services, such as subsidized housing, childcare, and welfare benefits. Coyne's meetings with Amanda were unproductive in helping Amanda progress toward the goal of independent living. Coyne has not been able to contact Amanda since August 2003.
 {¶ 13} Between May and July 2003, Amanda was evaluated by psychologist Patricia Gillette ("Gillette") of Northshore Psychological Services. Gillette testified that Amanda suffered from an underlying personality disorder or chronic maladjustment in dealing with people and situations. Gillette further testified that Amanda had strong psychological defense mechanisms that caused Amanda to repress her feelings and memories of her own abusive upbringing. As a result, Gillette doubted Amanda's present ability to grasp reality or properly care for a child.
 {¶ 14} Robert Bach of Baraboo, Wisconsin, was determined to be Angel's biological father. Bach has shown no interest in fathering the child or contesting the termination of his parental rights.
 {¶ 15} Angel's condition has improved since her removal by Ashtabula Children Services. By May 2003, at nineteen months, Angel's weight was within normal range and she was developing normally for a child of her age. Angel has been diagnosed with several medical conditions. She is allergic to milk and soy and, therefore, requires special formula for feeding and has special dietary restrictions. Angel also suffers from gastroesophogeal or GE reflux for which she takes Prevacid and Reglan; kidney reflux which causes chronic urinary tract infections; and congenital defects in her urethra and vagina.
 {¶ 16} On April 24, 2003, Ashtabula Children Services moved for permanent custody of Angel. Hearings on Ashtabula Children Services' motion were held on July 30, 2003, August 27, 2003, October 21, 2003, and November 18, 2003, before a magistrate of the court.
 {¶ 17} On August 27, 2003, Grace moved the trial court for custody of Angel. On September 9, 2003, Amanda's brother and sister-in-law, David and Tabatha Lilly of Lenoir City, Tennessee, also moved the court for custody of Angel. The court denied both motions.
 {¶ 18} On April 30, 2004, the magistrate issued her decision recommending the termination of Amanda's parental rights and granting of permanent custody of Angel to the Ashtabula Children Services. Amanda filed objections to the magistrate's decision on May 14, 2004. On July 1, 2004, the trial court overruled Amanda's objections and adopted the magistrate's decision. This appeal timely follows.
 {¶ 19} Amanda raises the following assignments of error:
 {¶ 20} "[1.] The court erred in failing to hold a hearing on appellant's objections to the magistrate's decision and in failing to make an independent analysis of said objections.
 {¶ 21} "[2.] The court erred in admitting impermissible hearsay into the permanent custody proceedings in the form of the testimony of Drs. Steven Kanter and Patricia Gillette.
 {¶ 22} "[3.] The court erred in admitting Children Services' exhibit #2, the [Ashtabula Children Services'] six-month review of subject child Anthony Goff, as irrelevant and prejudicial.
 {¶ 23} "[4.] The court erred in failing to consider the statutory factors under R.C. 2151.414(D) in its decision.
 {¶ 24} "[5.] The court erred in holding that Children Services had proven by clear and convincing evidence that it was in the best interests of the subject child to terminate parental rights."
 {¶ 25} In the first assignment of error, Amanda argues that the trial court failed to conduct an independent analysis of her objections to the magistrate's decision by not holding a hearing on the objections and by ruling on the objections before a written transcript of the permanent custody hearings had been prepared.
 {¶ 26} The magistrate's decision was filed April 30, 2004. Amanda filed her objections on May 14, 2004, combined with a request for hearing and a request for transcript at public expense. On July 1, 2004, the trial court adopted the magistrate's decision. On the same day, in a separate judgment entry, the trial court overruled Amanda's objections, denied her request for a hearing, and granted her request for a copy of the transcript to be prepared at public expense.
 {¶ 27} The Ohio Rules of Juvenile Procedure provide that a party may file objections "[w]ithin fourteen days of the filing of a magistrate's decision" and that "[a]ny objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate." Juv.R. 40(E)(3)(a) and (b). The Juvenile Rules further provide that "[t]he court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter itself." Jur.R. 40(E)(4)(b).
 {¶ 28} Amanda's objections to the magistrate's decision were based on the magistrate's decision to admit certain evidence into the record and on certain of the magistrate's factual findings. Pursuant to Juv.R. 40(E)(3)(b), Amanda was required to support her objections with a transcript of the hearing. Cross v. Greaver, 11th Dist. No. 2003-T-0076,2004-Ohio-6335, at ¶ 11 ("[t]he duty to provide a transcript or affidavit of the proceedings to the juvenile court rests with the party objecting to the magistrate's decision"); In re Swain (1991),68 Ohio App.3d 737, 743 ("Juv.R. 40(D) * * * place[s] the burden of providing a transcript on the party who objects to the referee's findings").
 {¶ 29} At the time Amanda filed objections, she did not seek an extension of time to file the transcript or to supplement her objections with a copy of the transcript. The case law demonstrates that, in these circumstances, the proper procedure is to request a continuance or leave to supplement the objections with a transcript when available. See, e.g.In re Anderson, 11th Dist. No. 2004-T-0059, 2004-Ohio-5298, at ¶ 19
(appellant filed objections and "request[ed] additional time to obtain the transcript and to supplement her objections"); In re Sears, 10th Dist. No. 01AP-715, 2002-Ohio-368, 2002 Ohio App. LEXIS 319, at *5 (appellant "filed objections to the magistrate's decision, requesting that the trial court withhold on ruling on the objections until the transcripts * * * were prepared and reviewed by appellant"); Jennifer M.v. John K. (Jan. 22, 1999), 6th Dist. No. E-98-037; 1999 Ohio App. LEXIS 98, at *14 ("appellant filed a request for additional time to review a transcript of proceedings and file more specific objections thereto"); cf. In re Shull, 135 Ohio App.3d 708, 710, 1999-Ohio-950 (the objecting party sought "additional time to elaborate on the objections once the transcript was filed").
 {¶ 30} We further point out that the issues raised by Amanda's objections before the trial court are the same as those she now raises on appeal. Amanda does not claim that she was prevented from raising any argument because of not having the transcript before her. We have reviewed Amanda's arguments with the benefit of the transcript ordered by the trial court. Contrary to the dissent's assertion, there was nothing inherently prejudicial about the trial court's failure to grant Amanda's request for a transcript and Amanda has suffered no actual prejudice.
 {¶ 31} Nor did the trial court err by not holding a hearing on Amanda's objections. It is well-settled that "Juv.R. 40 does not mandate a hearing on a party's objections to a referee's report." Ober v. Ausra
(Dec. 23, 1994), 11th Dist. No. 94-P-0037, 1994 Ohio App. LEXIS 5902, at *3, citing Swain, 68 Ohio App.3d at 741; In re Zindle (1995),107 Ohio App.3d 342, 346; In re Vanek (Sept. 29, 1995), 11th Dist. No. 95-A-0027, 1995 Ohio App. LEXIS 4473, at *12.
 {¶ 32} Amanda's first assignment of error is without merit.
 {¶ 33} Amanda's second and third assignments of error challenge the magistrate's decision to admit certain evidence into the record. An appellate court's review of a lower court's decision to admit or exclude evidence is limited to whether the trial court abused its discretion. Inre Paris, 11th Dist. Nos. 2003-A-0133, 2003-A-0134, 2004-Ohio-1962, at ¶ 10 (citation omitted). An abuse of discretion is more than an error of law or judgment; an abuse of discretion means that the trial court has acted unreasonably, arbitrarily, or unconscionably. Id.
 {¶ 34} In the second assignment of error, Amanda argues that the trial court erred by admitting the testimony of Kanter and Gillette which, Amanda claims, was based on inadmissible hearsay. Amanda relies on this court's decision in In re Walker, 11th Dist. No. 2002-A-0089, 2003-Ohio-799. In Walker, this court held that a trial court committed reversible error by admitting and relying upon a psychological report which contained and was based upon inadmissible hearsay statements. Id. at ¶ 36.
 {¶ 35} The Ohio Rules of Evidence provide that "[t]he facts or data * * * upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Evid.R. 703. "Where an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied." State v. Solomon (1991), 59 Ohio St.3d 124, at syllabus.
 {¶ 36} Amanda argues that Kanter's psychological report, which Ashtabula Children Services attempted to have admitted, contained hearsay information obtained from Ashtabula Children Services. Specifically, Kanter's report noted that Amanda was removed from her mother's care as a young child due to allegations of abuse and neglect,[2] Amanda was physically abused while in her father's custody, and that Leonard's history included allegations of neglect and physical and sexual abuse. Ashtabula Children Services ultimately withdrew its proffer of Kanter's report.
 {¶ 37} Kanter continued to testify, however, regarding the results of his psychological examination of Amanda and his opinion of her ability to be an effective parent. This testimony was based on information obtained directly from Amanda in the course of administering various tests. As regards his determination that Amanda has a dependent personality disorder, Kanter testified that Amanda's personal history was only a "minor factor" and that it was not the "primary reason" for his conclusions. Moreover, Kanter testified that his diagnosis and recommendation would have been the same even in the absence of information about Amanda's personal history.
 {¶ 38} Amanda challenges Gillette's testimony on similar grounds. Gillette testified that she obtained Amanda's background situation and current treatment from Kanter's psychological evaluation, Ashtabula Children Services' case summary, and treatment summary from Northcoast Services. Although these reports provided Gillette with background information, Gillette did not testify regarding the substance of these reports. Gillette's recommendations were based on her own testing and clinical evaluation of Amanda. Gillette met with Amanda for approximately seven hours over a two month period of time and also observed Amanda's interaction with Angel. References to Amanda's personal history in Gillette's testimony were obtained from Amanda. Her conclusions, which were based upon a reasonable degree of psychological certainty, were that Amanda suffered from a chronic maladjustment and inability to correctly perceive reality, thus making her unable to respond to the needs of her daughter.
 {¶ 39} We hold that the trial court properly admitted Kanter's and Gillette's testimony. The Walker case is distinguishable because in that case the tainted psychological report was admitted into evidence, the results of the examination relied extensively on hearsay information, and the magistrate relied upon the inadmissible evidence in rendering his decision to terminate parental rights. None of these facts are true for this case. Paris, 2004-Ohio-1962, at ¶ 12 (distinguishing Walker); In reStillman, 155 Ohio App.3d 333, 343-344, 2003-Ohio-6229, at ¶ 66
(distinguishing Walker).
 {¶ 40} Amanda's second assignment of error is without merit.
 {¶ 41} In the third assignment of error, Amanda claims that the trial court erred by admitting into evidence a Dispositional Review Hearing Judgment Entry filed in the case of In re Anthony Goff, Ashtabula Court of Common Pleas, Juvenile Division, No. 02JC88, concerning Angel's half-brother. Amanda argues that this evidence is irrelevant to the present case and prejudicial, inasmuch as Amanda did not retain custody of Anthony Goff.
 {¶ 42} "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus.
 {¶ 43} At trial, Ashtabula Children Services argued that the Dispositional Review Hearing was relevant because it was probative of Amanda's progress in developing parenting skills and because it indicates that Amanda was ordered to take a second set of parenting classes. We find the document probative of the matters alleged by Ashtabula Children Services. The judgment entry demonstrates that Amanda's progress in parenting skills in Angel's case was considered in assessing her ability to parent Anthony. Requiring Amanda to repeat the same training and evaluations simply because her children are the subject of different cases is senseless. Evidence of progress, or the lack thereof, may properly be considered in a companion case.
 {¶ 44} The judgment entry does not indicate the ultimate disposition of the case involving Anthony. It merely states that the case plan is continued as previously filed and approved and that Amanda is ordered to retake parenting classes. This evidence is repetitive of other, uncontested testimony in the record. Therefore, Amanda was not prejudiced by the admission of the judgment entry into evidence.
 {¶ 45} The third assignment of error is without merit.
 {¶ 46} In the fourth assignment of error, Amanda argues that the trial court failed to consider the required statutory factors under R.C.2151.414(D) in rendering its decision to terminate her parental rights.
 {¶ 47} In order for the juvenile court to grant a motion for permanent custody, it must be determined "by clear and convincing evidence" that "it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody" and that one of the factors set forth in R.C. 2151.414(B)(1)(a) through (d) apply. R.C. 2151.414(B)(1). Clear and convincing evidence is that measure of proof "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 48} In determining the best interest of a child for the purposes of a motion for permanent custody, "the court shall consider all relevant factors, including, but not limited to * * * (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care-givers and out-of-home providers * * *; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child * * *; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 49} "This court has consistently held that the provisions of R.C.2151.414(D) are mandatory and `must be scrupulously observed.'" In reMeyer, 11th Dist. No. 2003-A-0064, 2003-Ohio-4605, at ¶ 24, quoting Inre Hommes (Dec. 6, 1996), 11th Dist. No 96-A-0017, 1996 Ohio App. LEXIS 5515, at *4. "Thus, the failure to discuss each of the factors set forth in R.C. 2151.414(D) when reaching a determination concerning the best interest of the child is prejudicial error." In re Jacobs (Aug. 25, 2000), 11th Dist. No. 99-G-2231, 2000 Ohio App. LEXIS 3859, at *13.
 {¶ 50} Amanda argues that the magistrate failed to adequately discuss two of the required statutory factors, Angel's wishes and whether Angel's need for a legally secure placement can be achieved without a grant of permanent custody to the Ashtabula Children Services. R.C. 2151.414(D)(2) and (4).
 {¶ 51} The magistrate's decision thoroughly discusses Angel's need for a legally secure placement. Angel has been in the custody of Ashtabula Children Services for over nineteen months since removal from Amanda's residence. Ashtabula Children Services' temporary custody of Angel was extended after one year which gave Amanda more time to meet the goals of her case plan. Nonetheless, Amanda has failed to demonstrate that placement with her would be possible in the foreseeable future. The magistrate noted that Angel has been abandoned by her biological father and that there are no appropriate relatives to assume care and custody of Angel. Angel's current foster parents are willing to adopt Angel should she become available. Accordingly, the magistrate adequately discussed Angel's need for legally secure placement.
 {¶ 52} The magistrate's decision is silent regarding Angel's own wishes. The trial court entered a judgment entry finding that Angel is unable to express her own wishes on account of her young age.[3] The guardian ad litem noted in his report that Angel "is too young to knowingly state a preference for adoption versus return to her mother." He further noted that "Angel appeared extremely happy and contented with her mother and brother" during scheduled visitation and that "Angel appeared to be happy, healthy, and integrated into the foster family." There was abundant witness testimony before the trial court regarding Angel's interactions with Amanda and Anthony as well as her foster family. Based on this record, we hold that the trial court complied with R.C. 2151.414 discussing Angel's inability to express her own wishes in regards to her placement.
 {¶ 53} Amanda's fourth assignment of error is without merit.
 {¶ 54} Under the fifth and final assignment of error, Amanda argues that Ashtabula Children Services failed to prove by clear and convincing evidence that it was in Angel's best interest to terminate Amanda's parental rights. Amanda relies principally upon the guardian ad litem Winer's recommendation that termination of Amanda's parental rights is not in Angel's best interests. Winer expressed his opinion that reunification between Amanda and Angel is still possible and that Ashtabula Children Services should have exerted greater efforts toward this goal. Winer stated that "Amanda now appears to possess the maturity and capability to obtain housing, daycare, and ongoing medical care for Angel. With proper support and services, Amanda appears ready to be a fit and capable parent." Amanda also relies on the testimony of Krieg, Amanda's counselor at Northcoast Services, that she was aware of no reason why Amanda wouldn't be able to parent Angel with proper support services. We disagree.
 {¶ 55} One of the principal concerns to be addressed before Angel could be reunified with Amanda was a lack of suitable housing. The record clearly demonstrates that, at no time during these proceedings, has Amanda been able to provide safe and sanitary housing for Angel. For the majority of this time Amanda resided with her mother Grace and step-father Leonard on Stanhope Kelloggsville Road. Winer admitted that this home was neither safe, healthy, or nurturing, although Winer believed that this home was suitable for visits ("assuming family dogs would be kept * * * away from Angel"). After leaving this residence, Amanda moved in with a boyfriend who was staying with his sister and her fiancée. Since Amanda did not provide anyone with her boyfriend's sister's address, it was impossible to make any judgment regarding the appropriateness of this residence for Angel. Amanda's moving into her boyfriend's sister's rental house did not constitute progress toward independent living. In any event, Amanda testified that she spends the weekends with Grace and Leonard at another residence on Stanhope Kelloggsville Road, the address of which Grace and Leonard have refused to divulge.
 {¶ 56} The evidence of record also supports the magistrate's conclusion that Amanda has not complied with the goal of maintaining a regular income. In the year and a half following Angel's removal, Amanda has only been employed at two jobs for approximately nine months. In each case Amanda's employment was compromised by her failure to report to work.
 {¶ 57} Amanda's maturity is also suspect. The magistrate noted that Amanda continues to blame Ashtabula Children Services for Angel's removal. Amanda has not cooperated with her caseworker, Colby, or with Coyne of Northcoast Services in availing herself of social support services. We also note that Amanda filed unsubstantiated allegations of sexual abuse against Angel's foster parents based on her own misunderstanding of Angel's medical condition. Amanda has not complied with the court's order to attend a second set of parenting classes.
 {¶ 58} It is acknowledged that Amanda completed some of her case plan goals. She graduated from high school, underwent the required psychological evaluations, attended some parenting classes, and visits regularly with Angel. These accomplishments, however, do not demonstrate the present ability to care for Angel. Winer, as well as Gillette and Krieg, expressed the opinion that with proper support Amanda could parent Angel. We need not disprove this opinion in order to uphold the magistrate's finding that the termination of Amanda's parental rights is in Angel's best interest. Amanda has had over a year and a half to demonstrate her ability to properly parent Angel and has not done so. The law does not require that Angel wait indefinitely for a legally secure placement.
 {¶ 59} Finally, we find that the magistrate's determination that Angel's grandmother, Grace, and maternal uncle, David, are not appropriate to assume the care and custody of Angel is supported by clear and convincing evidence. Winer's report acknowledged that Grace is not an appropriate placement option for Angel. Amanda and Angel were residing with Grace at the time of Angel's removal. The condition of Grace's residence was part of the reason for that removal. David only filed for custody of Angel on September 9, 2003, shortly before the completion of the permanent custody hearings. David has not retained counsel to assist in filing for custody and has not arranged for an interstate home study. He has only seen Angel once, shortly after she was born.
 {¶ 60} The fifth assignment of error is without merit.
 {¶ 61} For the foregoing reasons, the decision of the Ashtabula County Court of Common Pleas, Juvenile Division, granting permanent custody of Angel Lilly to Ashtabula Children Services is affirmed.
Rice, J., concurs,
Christley, J., dissents with a Dissenting Opinion.
[1] Angel has subsequently been diagnosed with allergies to soy as well as to milk products, with kidney reflux, and with congenital defects to her urethra and vagina.
[2] Grace, Amanda's mother, testified at the hearing that Amanda and her brother, David, were removed from her custody for allegations of failure to thrive, malnutrition, and neglect in 1985.
[3] This case was remanded to the trial court on November 12, 2002. The trial court's finding regarding Angel's wishes is contained in a judgment entry dated November 22, 2004.