OPINION
{¶ 1} This case involves the termination of parental rights. Appellee, Ashtabula County Children Services Board ("ACCSB"), filed a motion in the juvenile division of Ashtabula County Common Pleas Court to award permanent custody to ACCSB and to terminate the parental rights of appellant, Amanda Lilly ("Lilly"), and Mark Schreiber ("Schreiber"). Lilly and Schreiber are the biological parents of Bethany Schreiber ("Bethany"), born May 26, 2004.
 {¶ 2} The trial court found that "all of the statutory requirements have been met and ACCSB has shown clearly and convincingly that it is in the child's best interest to be placed into the permanent custody of ACCSB." It also found that all of the criteria in R.C. 2151.414(B), (D), and (E) had been satisfied. Its judgment entry granted the motion for permanent custody of ACCSB and divested Lilly and Schreiber of their parental rights. Upon review, we affirm the judgment entry of the trial court.
 {¶ 3} We note as a preliminary matter that Schreiber stipulated, prior to the conclusion of the hearing, that it would be in the child's best interest and that all statutory criteria were satisfied in order to terminate his parental rights. Pursuant to this stipulation, the trial court ordered that Schreiber's parental rights be terminated.
 {¶ 4} Lilly has assigned a single assignment of error:
 {¶ 5} "The juvenile court erred in finding that Children Services proved by clear and convincing evidence that termination of parental rights was in the subject child's best interest."
 {¶ 6} In this assignment of error, Lilly is challenging the trial court's order on the basis that the evidence adduced at hearing did not satisfy the burden of proof imposed upon ACCSB to prove by clear and convincing evidence that termination of her parental rights was in the child's best interest.
 {¶ 7} At trial, the burden of proof on ACCSB was to prove by clear and convincing evidence that the provisions of R.C. 2151.414(B), (D), and (E) support the granting of permanent custody to ACCSB.[1]
 {¶ 8} Even though Lilly's assignment of error focuses on the second prong of the trial court's decision-making process, the prong having to do with determining the child's best interest, because of the gravity of the parental rights' determination, we will also review the trial court's decision-making process with respect to the first prong, having to do with compliance with the provisions of R.C. 2151.414(B) and (E). In this regard, the Supreme Court of Ohio has stated that a parent "`must be afforded every procedural and substantive protection the law allows,'"[2]
We employ an abuse of discretion standard to do so.[3]
 {¶ 9} As applicable to this case, the first prong of the trial court's decision-making process involved a finding under R.C. 2151.414(B)(1)(a) that the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." The court "shall consider all relevant evidence" in making such a finding.[4]
 {¶ 10} The record reflects that the child was placed in the temporary custody of ACCSB two days after her birth, on May 28, 2004. Emergency temporary custody was sought due to prior involvement with Lilly for Angel Goff, another one of her children, for whom permanent custody and termination of parental rights was sought by ACCSB and eventually granted.[5]
 {¶ 11} A case plan for possible reunification with Bethany was signed by Lilly on June 9, 2004. The requirements of the case plan were that Lilly obtain adequate income, that she find suitable housing, that she initiate visitations with Bethany, that she receive a drug and alcohol assessment, that she get a psychological evaluation, and that she keep in contact with her caseworker regarding her residence.
 {¶ 12} On August 18, 2004, a stipulation was entered to the effect that Bethany was a dependent child.
 {¶ 13} On October 11, 2004, Lilly and Schreiber moved to Tennessee to pursue better employment opportunities. Prior to leaving Ohio, Lilly had seven visitations scheduled with Bethany, showing up for four of them, and missing three others, without notifying the agency. When she left Ohio, she did not inform her caseworker of the fact that she was moving to Tennessee. While she and Schreiber were in Tennessee, she had no contact with Bethany. Lilly returned to Ohio on January 29, 2005. She was gone one hundred ten days.
 {¶ 14} On October 20, 2004, ACCSB filed for permanent custody of Bethany. This motion was heard by the trial court on March 17, 2005.
 {¶ 15} At the hearing, it was clear that Lilly had not complied with the requirements of the case plan. She was not employed, nor had she submitted any job applications since returning seven weeks prior to the hearing. She did not have stable, independent housing. The place where she and Schreiber were staying for the previous three weeks was his mother's three bedroom trailer. It was the fourth residence since Bethany's birth, and Lilly paid rent at none of them. She did have a drug and alcohol assessment completed, at the conclusion of which it was suggested that she attend an AA meeting. She neglected to attend any such meeting. She did not complete the psychological evaluation with Dr. Patricia Gillette, either canceling her appointments at the last minute or simply failing to show up. She was not in counseling and was not receiving case management services.
 {¶ 16} Dr. Gillette testified that Lilly did not complete the psychological evaluation. However, enough of the testing was completed so that she was able to determine that Lilly was not capable of providing a suitable permanent home for Bethany. She was also able to diagnose Lilly with a borderline personality disorder, and opined that this disorder severely impaired Lilly's ability to parent Bethany. In her words, "[t]he personality disorder is a pervasive and chronic instability and a mental health disturbance." Dr. Gillette had first seen Lilly in 2003, when an evaluation was ordered to determine Lilly's ability to parent her other child, and testified that in the ensuing year Lilly's mental health had deteriorated and that she was exhibiting signs of psychosis. Again, in the words of Dr. Gillette, "[Lilly] was not functioning, as I could see, in any area of her life well; work, family, personal, self-esteem. So, she really was not functioning well enough to take care of another child or another person." In the doctor's opinion, Lilly was not able to provide a safe environment for a child within a year. While Dr. Gillette stated that treatment was available for Lilly's borderline personality disorder in the form of dialectical behavior therapy, such therapy can last from two to ten years, assuming the patient is compliant.
 {¶ 17} Having considered "all relevant evidence," as required by R.C.2151.414(E), the trial court found that several of the factors under that subsection were present. Only "one or more" of such factors are required to make the finding that the child could not be placed with the parents within a reasonable time or should not be placed with them. Those factors under subsection (E) of R.C. 2151.414 consist of the following:
 {¶ 18} Lilly's failure to abide by the terms of the case plan supports a finding that she has "failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home," pursuant to R.C. 2151.414(E)(1);
 {¶ 19} Lilly's borderline personality disorder, diagnosed by Dr. Gillette, is of such severity that Lilly will be unable to provide an adequate permanent home for the child within one year, pursuant to R.C.2151.414(E)(2);
 {¶ 20} Lilly has failed to have contact with Bethany for a period of ninety days or more, and has therefore abandoned her as defined in the Revised Code, pursuant to R.C. 2151.414(E)(10);[6] and
 {¶ 21} Lilly's parental rights with respect to her other child, Angel Goff, had previously been adjudicated and were involuntarily terminated, a relevant factor under R.C. 2151.414(E)(11).
 {¶ 22} Having satisfied the first prong of the determination to terminate parental rights, the trial court is then required to determine the best interest of the child, pursuant to R.C. 2151.414(B), employing the factors set forth in R.C. 2151.414(D) as guidelines for such best-interest determination. In this process, the trial court is admonished not to "consider the effect the granting of permanent custody to [ACCSB] would have upon any parent of the child."[7]
 {¶ 23} The statutory guidelines in subsection (D) of R.C. 2151.414, and the trial court's findings with respect to them, are as follows:
 {¶ 24} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers * * * [.]" The trial court recounted that there was little or no interaction between Lilly and Bethany. There were scheduled visitations, but Lilly failed to show up for at least three of them. There were no visitations in September 2004, the month before she and Schreiber moved to Tennessee.
 {¶ 25} Furthermore, the foster parents testified that Bethany was placed with them when she was nine days old, and that since then she has bonded well with her half-sibling, Angel Goff, and their eight-year-old son, both of whom live with them. They also have extended family who have bonded well with Bethany.
 {¶ 26} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem * * * [.]" The report of the guardian ad litem recommends that Bethany be placed in the permanent custody of ACCSB.
 {¶ 27} "(3) The custodial history of the child * * * [.]" The trial court found that Bethany was removed from Lilly when she was two days old, that she was placed with the foster parents when she was nine days old, and that she was ten months old at the time of the hearing.
 {¶ 28} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" The trial court found that Bethany had no stability since birth and would not be able to achieve it were she returned to Lilly. The foster parents expressed a desire to adopt Bethany. This would achieve a permanent placement.
 {¶ 29} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." The trial court found that in reference to subsection (E)(10), as discussed above, Lilly had not had any contact with the child for five and one-half months prior to the hearing and did not make any attempt to schedule a visitation until one month before the permanent custody hearing.
 {¶ 30} With reference to subsection (E)(11), also discussed above, the trial court found that it had terminated Lilly's parental rights regarding her other daughter, Angel Goff, on July 1, 2004.
 {¶ 31} Lilly argues that ACCSB did not prove its case by clear and convincing evidence. Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to "`produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.'"[8] Lilly cites to Dr. Gillette's testimony to the effect that she possessed average intelligence and had no cognitive problems; that she performed better on a parent awareness test in 2004 than she had in 2003; that a drug screen came back negative and had no identifiable substance abuse problem; that, if she went to the therapy recommended for her, "the situation could be different"; that she initiated at least three visits with Bethany, and that the visits went without incident; and that her motive in leaving Ohio with Schreiber was to better her economic condition.
 {¶ 32} Lilly is requesting this court to accept all her arguments at face value and overlook the evidence and testimony that she abandoned her child when she went to Tennessee; that she did not complete most of the requirements of the case plan she agreed to, including employment, stable and independent housing, keeping in contact with her caseworker, and completing her psychological evaluation; that she suffered from a chronic mental condition, which left her unable to safely care for a child within a year; and that her parental rights had previously been terminated with respect to another daughter. By itself, however, this evidence and testimony is clear and convincing and would allow the trier of fact to arrive at a firm belief or conviction that Lilly's parental rights should be terminated. In addition, R.C. 2151.414(B) requires the trial court to focus on the best interest of the child instead of the parent; and R.C.2151.414(C) directs the trial court not to consider the effect that granting permanent custody to ACCSB would have upon the parent. Lilly's arguments tend to focus on her own conditions, and have little or no bearing on the best interest of her child. In effect, the evidence against her continuing to have parental rights, which we have already stated is clear and convincing evidence, is not diminished or rebutted by any of her arguments. The trial court's judgment entry correctly addressed the best interest of Bethany instead of Lilly. There was no abuse of discretion in the decision made by the trial court.
 {¶ 33} The assignment of error is without merit.
 {¶ 34} The judgment of the trial court is affirmed.
Ford, P.J., Grendell, J., concur.
[1] R.C. 2151.414(B), (D), and (E).
[2] In re Hayes (1997), 79 Ohio St.3d 46, 48, quoting In re Smith
(1991), 77 Ohio App.3d 1, 16.
[3] In re Snow, 11th Dist. No. 2003-P-0080, 2004-Ohio-1519, at ¶ 28, citing Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
[4] R.C. 2151.414(E).
[5] See In re Goff, 11th Dist. No. 2004-A-0051, 2004-Ohio-7235.
[6] See R.C. 2151.011(C).
[7] R.C. 2151.414(C).
[8] In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quotingCross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.