DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Plaintiff-Appellant North Fork Properties ("North Fork") has appealed from the judgment of the Summit County Court of Common Pleas which affirmed the decision of the Bath Township Board of Zoning Appeals ("BZA"). This Court affirms.
 I {¶ 2} On November 26, 2001, North Fork Properties requested the issuance of a zoning certificate for an office building to be placed on its property, specifically parcels 04-05410, 04-06793, 04-06792, 04-06791, and 04-06790, located on the west side of North Cleveland-Massillon Road, directly west of the intersection of North Cleveland-Massillon and Ghent Hills Roads ("the property"). The Deputy Zoning Inspector denied the request on the ground that the property was located in an R-2 Residential District and North Fork intended to construct an office for business use.
 {¶ 3} On December 4, 2001, North Fork filed a Zoning Variance Application requesting a variance to use the property for an office building and for other reasonable and necessary variances. The Deputy Zoning Inspector denied the application, finding that the BZA did not have the authority to permit a use where such use was prohibited by the Resolution. Following appeal, the trial court found that the BZA did have the authority to issue a use variance. This Court affirmed the decision of the trial court. See North Fork Properties v. BathTwp., 9th Dist. No. 21597, 2004-Ohio-116.
 {¶ 4} Upon return of the matter to the BZA, the Board held hearings over five days to hear evidence on whether a use variance was appropriate. During those hearings, the Board heard from numerous witnesses. Daniel Marchetta, the owner of North Fork Properties, testified about the unique characteristics of the property that made it difficult to develop. North Fork also presented the testimony of a land use planner, Mary Sandra McKew, a traffic engineer, Brian Tondra, and an expert on real estate valuation, Roger Ritley. In response, the Township presented the testimony of a civil engineer, Brad Becker, the Bath Township Zoning Inspector, Mark Fenn, a real estate appraiser, Roger Sours, a general contractor, Sean Doyle, and an expert land planner, D.B. Hartt.
 {¶ 5} During the proceedings, North Fork moved to have two of the BZA members recuse themselves from the proceedings. North Fork moved to have Robert Seiler removed due to a letter that Mr. Seiler had submitted to the Board. North Fork asserted that Mr. Seiler was acting as a litigant and should remove himself. At the beginning of the next hearing, Mr. Seiler recused himself and did not participate in the Board's decision. North Fork also moved the chair of the BZA, George Clark, to recuse himself due to the fact that he owned property near the parcels at issue. Mr. Clark declined to recuse himself.
 {¶ 6} At the conclusion of the hearings, the BZA voted 3-1 to deny North Fork a use variance. North Fork timely appealed the BZA's decision to the trial court. In turn, the trial court found that North Fork's assignments of error lacked merit. Accordingly, on June 16, 2006, the trial court affirmed the judgment of the BZA. North Fork has timely appealed the trial court's judgment, raising four assignments of error for review.
 II Assignment of Error Number One "THE TRIAL COURT ERRED BY FAILING TO WEIGH THE EVIDENCE IN THE ENTIRE RECORD AND APPRAISE ITS CREDIBILITY AND PROBATIVE CHARACTER."
 {¶ 7} In its first assignment of error, North Fork has argued that the common pleas court failed to apply the proper standard of review when it reviewed the BZA's decision. Specifically, North Fork has argued that the common pleas court erred because it applied the appellate court standard of review, not the common pleas court standard of review. We disagree.
 {¶ 8} When reviewing a decision pursuant to R.C. 2506.04, the common pleas court:
 "[C]onsiders the `whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." Henley v. Youngstown Bd. of Zoning Appeals (2000), 90 Ohio St.3d 142, 147.
In its entry, the trial court restated this standard of review verbatim. North Fork, however, asserts that the trial court's statements that it would not "redetermine the facts" and that it would not "substitute its judgment for that of the BZA" are improper. We disagree.
 {¶ 9} In Dudukovich v. Lorain Metropolitan Housing Authority (1979),58 Ohio St.2d 202, 207, the Ohio Supreme Court held as follows with respect to the trial court's standard of review:
 "We caution, however, to add that this does not mean that the court may blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise. The key term is `preponderance.' If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must affirm the agency decision; if it does not exist, the court may reverse, vacate, modify or remand." Id.
As such, the trial court's conclusions that it was not permitted to substitute its judgment for that of the BZA or re determine the facts were correct statements of the law. Accordingly, North Fork's first assignment of error lacks merit.
 Assignment of Error Number Two "THE TRIAL COURT ERRED WHEN IT HELD THAT THE BZA'S DECISION WAS NOT ARBITRARY, CAPRICIOUS, AND UNREASONABLE BECAUSE THE BZA DENIED NORTH FORK'S CONSTITUTIONALLY GUARANTEED RIGHT TO A FAIR AND IMPARTIAL HEARING."
 {¶ 10} In its second assignment of error, North Forth has argued that it was denied the right to a fair hearing. Specifically, North Fork has asserted that numerous irregularities in the proceedings denied it a fair and impartial hearing. We disagree.
 {¶ 11} On appeal, North Fork has asserted that the following irregularities occurred during the hearing before the BZA: 1) the chairman of the BZA, Mr. Clark, refused to recuse himself despite owning property near the property at issue, 2) BZA members sought to introduce evidence, 3) the BZA engaged in improper ex parte communications with the attorney for Bath Township, and 4) a BZA member expressed reluctance over the BZA's authority to grant a use variance.
 {¶ 12} "A fair trial in a fair tribunal is a basic requirement of due process." In re Murchison (1955), 349 U.S. 133, 136. This applies to administrative agencies that adjudicate, like the BZA, as well as to courts. Withrow v. Larkin (1975), 421 U.S. 35, 46. A biased decisionmaker is constitutionally unacceptable and courts have found such bias where the adjudicator has a pecuniary interest in the outcome of a decision. Id. at 47. However, it is well-settled that a reviewing court must presume that the decision of an administrative agency is valid and was reached in a sound manner. See, e.g., Cleveland v. BudgetComm. (1977), 50 Ohio St.2d 97, 99. This presumption imposes upon North Fork the burden of proving its contention that the board members were biased, partial or prejudiced to such a degree that their presence adversely affected the board's decision. Ohio Motor Vehicle Dealers Bd.v. Central Cadillac Co. (1984), 14 Ohio St.3d 64, 67.
 {¶ 13} Mr. Clark admitted that he owned property near the property owned by North Fork. However, it is undisputed that Mr. Clark's office space is in no manner similar to the office building proposed by North Fork. It is neither similar to the size of the proposed building, nor is it used for a similar purpose as the proposed purpose of the new build. Mr. Clark testified under oath that his office building was used by himself and a family member and had never been available to the public to rent. Furthermore, North Fork introduced no evidence of any kind that its proposal would affect the value of Mr. Clark's existing office. Accordingly, North Fork has not overcome the presumption that Mr. Clark reached his decision in a sound manner.
 {¶ 14} North Fork has properly asserted "that the members of the zoning board are required to act as impartial quasi-judicial officers, and that neither the members nor the board can engage in a dual capacity as judge and litigant in matters before the Board of Zoning Appeals."Rapp v. Bd. of Zoning Appeals Butler Township (Jan. 14, 1992), 2d Dist. No. 12715, at *3; see, also Withrow, 421 U.S. at 48. Upon review, however, we find no impermissible acts which affected the fairness of North Fork's hearing.
 {¶ 15} BZA member Robert Seiler introduced a letter that he had sent to Mr. Clark into the record of the proceedings below. That letter commented on evidence that the BZA had received, suggested additional evidence that the BZA should seek to receive, and introduced personal observations Mr. Seiler had made while living in the community. Assuming arguendo that any of these observations were improper, the letter was stricken from the record and there is no indication that it was ever considered by any of the voting BZA members. Furthermore, after the propriety of the letter was questioned by North Fork's counsel, Mr. Seiler recused himself. Moreover, there is no evidence that Mr. Seiler and the other BZA members had previously engaged in any discussion about North Fork's variance other than their on-the-record discussions during the hearing. As such, North Fork has not overcome the presumption that the voting BZA members' votes were reached in a sound manner.
 {¶ 16} In addition, North Fork has asserted that Mr. Clark introduced evidence into the record while acting as the chair person of the BZA. North Fork's contention is not supported by the record. Mr. Clark questioned witnesses during the hearing; the statements contained in his questions are no more considered evidence than the questions of counsel. Furthermore, while Mr. Clark did appear to make a factual statement during deliberations regarding the reason that no homes had been sold on Cleveland-Massillon Road, this Court cannot find that this passing comment affected the fairness of the five-day hearing that North Fork received.
 {¶ 17} We note that North Fork's remaining assertions lack merit. While BZA member Linda Hastings questioned the validity of this Court's judgment which found that the BZA had the authority to issue use variances, there is no evidence to support North Fork's assertion that she did not abide by the mandate of this Court. As such, her statements in no manner affected the fairness of North Fork's hearing.
 {¶ 18} Finally, North Fork has asserted that Mr. Clark engaged in ex parte communications with the attorney for the Township. The record, however, undermines any such assertion. Mr. Clark noted that he had asked both parties to submit memoranda on legal issues before the BZA. While North Fork's counsel asserted that he did not receive such a request, there is no evidence that Mr. Clark's requests were ex parte. Under oath, the attorney for the Township denied any ex parte communication with Mr. Clark. In addition, North Fork was given the opportunity and in fact responded to the memorandum drafted by the Township's counsel.
 {¶ 19} Accordingly, North Fork has identified no evidence in the record to support its contention that it received an unfair hearing or that the BZA members were biased. In stark contrast, the BZA held numerous hearings and permitted lengthy testimony from North Fork and its hired experts. The BZA members stayed until late in the night on numerous days to accommodate a full and fair hearing on North Fork's request for a use variance. North Fork's second assignment of error, therefore, lacks merit.
 Assignment of Error Number Three "THE TRIAL COURT ERRED WHEN IT FOUND THAT THE BZA'S DECISION WAS SUPPORTED BY A PREPONDERANCE OF SUBSTANTIAL, RELIABLE, AND PROBATIVE EVIDENCE ON THE WHOLE RECORD."
 {¶ 20} In its third assignment of error, North Fork has alleged that the trial court's judgment was not supported by the evidence. Specifically, North Fork has contended that its evidence was more credible and probative than the evidence introduce by Bath. This Court disagrees.
 {¶ 21} The standard of review to be applied by an appellate court in a R.C. 2506.04 appeal is "more limited in scope" than the review performed by the trial court. (Emphasis sic.) Henley, 90 Ohio St.3d at 147, citingKisil v. Sandusky (1984), 12 Ohio St.3d 30, 34. In Henley the Ohio Supreme Court explained its analysis of an appellate court's review procedure stating:
 "[R.C. 2506.04] grants a more limited power to the court of appeals[,] * * * which does not include the same extensive power to weigh `the preponderance of substantial, reliable, and probative evidence,' as is granted to the common pleas court. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." (Citations omitted). Henley, 90 Ohio St.3d at 147.
Accordingly, an appellate court's review examines whether the trial court abused its discretion. Baire v. Bd. of Ed. of the William R.Burton Voc. Ctr. Schools (Apr. 12, 2000), Lorain App. No. 99CA007293, at *3, citing Qualls v. Civ. Service Commn. (June 18, 1997), 9th Dist. No. 17977, at *3. See also, Chafe Towing, LLC v. Springfield Twp. (Dec. 19, 2001), 9th Dist. No. 20632, at *2. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 22} A use variance authorizes land to be used for "purposes other than those permitted in the [zoning] district as prescribed in the relevant regulation." Schomaeker v. First Nat'l Bank (1981),66 Ohio St.2d 304, 306. A township board of zoning appeals maintains wide latitude in deciding whether to grant or deny a variance. Id. Additionally, a township board of zoning appeals may:
 "Authorize, upon appeal, in specific cases, such variance from the terms of the zoning resolution as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the resolution will result in unnecessary hardship, and so that the spirit of the resolution shall be observed and substantial justice done[.]" R.C. 519.14(B).
 {¶ 23} In making its determination to grant or deny a variance, the board of zoning appeals must determine whether enforcement of the resolution will cause the property owner an unnecessary hardship.Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals (1987),31 Ohio St.3d 260, 263. "Unnecessary hardship" results when it is not economically feasible to put the property to a permitted use under its present zoning classification due to characteristics unique to the property. Hulligan v. Bd. of Zoning Appeals (1978), 59 Ohio App.2d 105,109, quoting Fox v. Johnson (1971), 28 Ohio App.2d 175, 181. However, merely stating that the land would be more valuable with the variance, or less valuable without it, does not amount to a sufficient "hardship." Id. Rather, evidence must be presented to show that the property is unsuitable to any of the permitted uses as zoned. See Cole v. Bd. ofZoning Appeals (1973), 39 Ohio App.2d 177, 183-84. Furthermore, a hardship is not considered "unnecessary" if the landowners imposed the hardship upon themselves. Consol. Mgmt., Inc. v. Cleveland (1983),6 Ohio St.3d 238, 242.
 {¶ 24} Initially, we note that North Fork has relied in part in its arguments on the fact that the small size of the lots restricts its ability to build homes which would be well received by those seeking to live in Bath. However, the limitations based upon the size of the lots cannot be considered in determining whether an unnecessary hardship exists. When North Fork purchased the property, the land was one lot, consisting of a little more than seven acres. North Fork then voluntarily subdivided the property into five smaller lots in order to avoid impending zoning changes. Accordingly, the restrictions on the size of the homes that could be built on the individual lots cannot form the basis of North Fork's claim of unnecessary hardship. Id.
 {¶ 25} We begin our analysis by noting that it is undisputed that the parcels owned by North Fork have unique characteristics. The properties are subject to steep slope setbacks as well as riparian setbacks. As such, the area of the property which is able to be built upon is only a fraction of the total area of the property. However, both sides agree that the property has more than two acres upon which a residence could be built.
 {¶ 26} The parties' views, however, diverge regarding the question of whether it is economically feasible to develop the land under its current zoning restrictions. On appeal to the trial court and to this Court, North Fork has effectively argued that its evidence and experts were more credible than the evidence and experts relied upon by the Township. Upon review, we find no abuse of discretion by the trial court in its determination that the BZA's decision was supported by the appropriate quantum of evidence.
 {¶ 27} Mr. Marchetta testified that it was not economically feasible to build a residential structure on the parcels. In support, Mr. Marchetta testified at length regarding the unique characteristics of the property. In addition to the characteristics noted above, Mr. Marchetta testified that the property is adjacent to a wastewater treatment plant and near a restaurant and bar. Mr. Marchetta also testified at length that he did not believe that a market existed for any residential structure that would be built on the property. To support that conclusion, Mr. Marchetta testified that no new homes had been built in that area of Cleveland-Massillon Road in nearly thirty years. Further, Mr. Marchetta noted that the structure would have to be built approximately sixty feet from Cleveland-Massillon Road due to the other qualities of the parcels. Mr. Marchetta noted that the heavy traffic flow on Cleveland-Massillon Road would make it difficult to sell any home built that closely to the road.
 {¶ 28} North Fork also presented the testimony of Roger Ritley. Specifically, Mr. Ritley testified about his qualifications regarding real estate valuation. Through his testimony, North Fork sought to establish that to develop the parcels at issue, the cost would be approximately $186 per square foot. Mr. Ritley testified that due to the other restrictions on the property, it would not be economically feasible for a builder to build a structure on that site at $186 per square foot.
 {¶ 29} North Fork also relied upon the testimony of Mary Sandra McKew, a lead consultant for the Township when it drafted its Comprehensive Plan. Ms. McKew testified that the proposed office building was consistent with the Comprehensive Plan.
 {¶ 30} In rebuttal, the Township relied upon its own appraiser, Roger Sours. Mr. Sours testified that it was economically feasible to build a residential structure on the properties. Furthermore, upon assuming that a structure could be built on four of the five lots, Mr. Sours concluded that the lots were worth $312,000 total, considerably more than the $75,000 Mr. Marchetta paid for them in 1988. Mr. Sours reached his conclusion by using comparables within the area and then adjusting their sales prices as they related to the parcels at issue. For example, Mr. Sours determined whether the topography of North Fork's parcels was better or worse than the topography of a comparable and adjusted his valuation accordingly. Mr. Sours admitted that these valuations did require some subjectivity, like nearly all valuations.
 {¶ 31} The Township also introduced the testimony of Sean Doyle, a general contractor. Admittedly, Mr. Doyle had little experience as a general contractor at the time of the hearing, having built only two homes. However, he testified that a home could be built on the parcels at issue for roughly $75 per square foot. Mr. Doyle concluded that he believed that it was economically feasible to build a residential structure or structures on the property.
 {¶ 32} Finally, the Township relied upon the testimony of D.B. Hartt, an expert in land planning. Mr. Hartt testified that residences could be built on several of the properties and could sell for between $100 and $175 per square foot. In addition, Mr. Hartt testified that he believed the homes could be built to be approximately 3,500 square feet without violating any of the existing zoning laws.
 {¶ 33} The BZA also heard testimony that the office building proposed by Mr. Marchetta would generate more traffic flow than proposed residences. North Fork countered, however, that the increase in traffic flow would be negligible as compared to the roughly 18,000 vehicles which use Cleveland-Massillon Road on a daily basis. The BZA also noted that nearly all of the properties surrounding the parcels at issue are zoned residential and have residences built upon them. Numerous owners of the adjacent properties testified opposing the grant of the variance and indicating that residences could be built and sold on Cleveland-Massillon Road as evidenced by their own homes.
 {¶ 34} Finally, during rebuttal, Mr. Marchetta admitted that the cost of building within Bath Township varied greatly. A log cabin had been built for roughly $50 per square foot, while Mr. Marchetta himself had built homes which cost roughly $300 per square foot. The market in Bath Township supported both ends of this cost spectrum.
 {¶ 35} It is undisputed that North Fork presented some evidence of a hardship. If believed, its experts established that North Fork could suffer a monetary loss if forced to build residential homes on the parcels. North Fork also presented evidence that there is no market for a residential home in that area. However, that conclusion was based upon a belief that only a 1400 square-foot home could be built on four of the five lots. As noted above, the subdivision of the lots cannot be used to create a hardship as North Fork voluntarily chose to subdivide the lots. Accordingly, North Fork's assertion that only small, undesirable houses could be built on the property is misplaced.
 {¶ 36} In contrast to North Fork's evidence, the Township presented evidence that the building costs in Bath vary greatly and that a market exists for both the lower and upper tier building costs. The Township also presented evidence that all of the surrounding areas had been successfully developed under residential zoning. Furthermore, the Township presented undisputed evidence that the property has more than two acres of property which could be developed as one unit. Accordingly, North Fork has the ability to build a large, upscale home if it believes that several smaller homes will not attract buyers. Finally, the Township presented its own expert in valuation, and Mr. Sours concluded that the property was much more valuable than when it was purchased and that it was economically feasible to build residences on the parcels.
 {¶ 37} The BZA, therefore, had competing evidence before it on the economic feasibility of developing the property under its current zoning plan. Contrary to North Fork's assertions, there is nothing in the record which demonstrates that its evidence was more credible or more reliable than the evidence proffered by the Township. Both valuation experts testified about their extensive education and experience and both used readily accepted methods to reach their conclusions. Furthermore, while Mr. Marchetta undoubtedly has more experience than Mr. Doyle with regards to general contracting, Mr. Marchetta, as the owner of North Fork, also has a personal interest in the decision reached by the BZA. Furthermore, residents of the Township demonstrated that residential property located on Cleveland-Massillon Road could be and had been built and sold.
 {¶ 38} The Township effectively rebutted each piece of credible evidence presented by North Fork with credible evidence from its own witnesses. In reaching its decision, the BZA chose to rely upon the evidence submitted by the Township. In turn, the trial court did not substitute its judgment for the BZA and affirmed that decision. Given the conflicting evidence presented to the BZA, we cannot say that the trial court abused its discretion in affirming the denial of North Fork's use variance. North Fork's third assignment of error lacks merit.
 Assignment of Error Number Four "THE TRIAL COURT ERRED BY FINDING THAT THE BZA'S DECISION WAS NOT UNCONSTITUTIONAL, ILLEGAL, ARBITRARY, CAPRICIOUS, AND UNREASONABLE BECAUSE THE BZA EMPLOYED THE WRONG LEGAL STANDARD GOVERNING USE VARIANCES."
 {¶ 39} In its final assignment of error, North Fork has asserted that the trial court erred by utilizing the wrong standard to determine whether a use variance was justified. We disagree.
 {¶ 40} In support of its final assignment of error, North Fork has asserted that the BZA used the wrong legal standard to determine whether a use variance was warranted. Specifically, North Fork has relied upon the statements of Mr. Clark during deliberations when Mr. Clark stated as follows:
 "And I'll tell you there were very few, if any, variances granted because the test that the Board applied was but for granting the variance you can't use the property. * * * I have seen change in the language of the Courts with economic viability, but it still doesn't really change the standard that was applied many years back."
While Mr. Clark's statements may not verbatim restate R.C. 519.14, they do nothing more than restate the current law surrounding use variances, i.e., evidence must be presented to show that the property is unsuitable to any of the permitted uses as zoned. Cole, 39 Ohio App.2d at 183-84. Mr. Clark's "but for" test encompasses the idea that North Fork must demonstrate that there are no economically viable uses for the property as zoned. Moreover, the formal decision issued by the Board tracks the language of and cites to R.C. 519.14. As such, there is no evidence in the record that BZA utilized the wrong standard in denying North Fork a use variance.
 {¶ 41} North Fork has also asserted that BZA members improperly considered alternate uses for the property which were based upon conjecture as those uses were currently impermissible, that the BZA failed to limit its consideration to relevant factors, and that BZA failed to consider other relevant factors. We find no merit in North Fork's contentions.
 {¶ 42} As noted above, the trial court properly found that BZA's decision was supported by a preponderance of substantial, reliable, and probative evidence. North Fork's reliance upon a few isolated, off-hand remarks is misplaced. While Ms. Hastings made reference to other uses of the property which did not conform to its current zoning code, her reference was relevant. Ms. Hastings' comments, regarding townhouses, supported her conclusion that individuals would be willing to live on the property in question. The ability to market homes on the property undoubtedly has an impact on whether it is an unnecessary hardship for North Fork to build on the property. As such, Ms. Hastings' comments were proper.
 {¶ 43} Finally, there is no support in the record for North Fork's contention that BZA members considered irrelevant information or that BZA members refused to consider relevant evidence. In stark contrast to those contentions, the BZA granted North Fork wide latitude in introducing evidence and cross-examining witnesses, and also permitted lengthy rebuttal testimony. There is no indication that the BZA failed to consider the evidence before it. Rather, the record reflects that the BZA applied the proper standard for a use variance and denied the variance. Accordingly, North Fork's final assignment of error lacks merit.
 III {¶ 44} North Fork's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
SLABY, P. J. MOORE, J. CONCUR