OHIO MOTOR VEHICLE DEALERS BOARD, APPELLEE, *v.*
CENTRAL CADILLAC COMPANY, APPELLANT.

[Cite as Ohio Motor Vehicle Dealers Bd. *v.* Central Cadillac Co. (1984),
14 Ohio St. 3d 64.]

(No. 83-1754—Decided December 5, 1984.)

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. B. Douglas Anderson,* for appellee.

*Messrs. Forrester & Kovanda* and *Mr. Ralph D. Kovanda,* for appellant.

*Per Curiam.*

I

The first of three issues raised by this appeal is whether Central Cadillac's display of two vehicles at a party held away from its licensed location violated R.C. 4517.03(B), 4517.22(G) or 4517.10. The General Assembly has enacted R.C. Chapter 4517 to regulate the business activities of motor vehicle dealers. These regulations afford protection to the consumer and facilitate the prevention and discovery of automobile thefts.

R.C. 4517.03(B) is the general rule prohibiting motor vehicle dealers from displaying motor vehicles at any place other than an established place of business. That rule states in pertinent part:

"No new motor vehicle dealer shall sell, display, offer for sale, or deal in motor vehicles at any place except an established place of business that is used exclusively for the purpose of selling, displaying, offering for sale or dealing in motor vehicles and has space, under roof, for the display of at least one new motor vehicle and facilities and space therewith for the inspection * * * of at least one motor vehicle * * *."

The state has a legitimate public interest in restricting dealer activities to their licensed locations. Such a restriction provides meaningful assurance that the continuing warranty and service obligations that follow the sale of a vehicle will be met by a dealer who can be located. Moreover, by confining dealers to their licensed locations, the state is better able to supervise this regulated industry and to assure that the requirements imposed by law are being met.

The General Assembly, in recognition of the fact that certain displays away from a dealer's licensed location are beneficial to the public, enacted R.C. 4517.22 allowing motor vehicle shows.[1] This statute describes in detail who may hold a motor vehicle show, what participants in a motor vehicle show may and may not do, and the procedures for obtaining per-

---

[1] "Motor vehicle show" is defined in R.C. 4517.01(P) as:

"* * * [A] display of current models of motor vehicles whereby the primary purpose is the exhibition of competitive makes and models in order to provide the general public the opportunity to review and inspect various makes and models of motor vehicles at a single location."

mission to hold or participate in a motor vehicle show. R.C. 4517.22(G) is worded similarly to R.C. 4517.03(B) and states:

"No motor vehicle dealer * * * shall display a motor vehicle at any place except his licensed location, unless he first obtains permission from the registrar and complies with the applicable rules of the motor vehicle dealers board."

This provision is not a mere restatement of the general prohibition against dealer displays away from the licensed location, but, rather, creates a requirement that a dealer wishing to participate in a motor vehicle show first obtain permission from the registrar.

Applying these statutes to the instant case, it is clear that Central Cadillac was not participating in, nor claiming to participate in, a motor vehicle show on May 16, 1981. Thus the prohibition against displays away from the licensed location of R.C. 4517.22(G) is inapplicable, and the general prohibition of R.C. 4517.03(B) controls. Since a motor vehicle show is the only permissible display of an automobile by a dealer away from its licensed location, and Central Cadillac was not participating in a motor vehicle show, Central Cadillac's May 16 display constituted a violation of R.C. 4517.03(B).

R.C. 4517.10 requires every motor vehicle dealer to obtain a license. This statute establishes procedures for obtaining and maintaining a license and requires that a dealer conspicuously display that license, or a certified copy, at each place of business. Appellant argues that it was not doing business at the May 16 party and so was not required by R.C. 4517.10 to display its dealer's license. This position, however, is out of step with the realities of the business world. The purpose of Central Cadillac's party was to generate sales and appellant invited persons it "hoped to do business with." Central Cadillac paid its sales staff to work at the party. There is also little doubt that Central Cadillac deducted the cost of this party and its employees' wages for that day as ordinary business expenses. These factors lead this court to the conclusion that Central Cadillac was doing business at the Shaker Heights office building on May 16, 1981. Appellant did not display a copy of its dealer's license at that place of business and thus violated R.C. 4517.10.

Accordingly, the judgment of the court of appeals on this issue is affirmed in part and reversed in part.

## II

The second issue raised by appellant is whether the mere presence of Charles DeLorean, a member of the Motor Vehicle Dealers Board and a competitor of appellant, adversely affected the impartiality of the board's proceedings even though Mr. DeLorean disqualified himself from voting on appellant's case. It is settled law that an appellate court must presume that the decision of an administrative board is valid and was arrived at in a proper manner. *Wheeling Steel Corp.* v. *Evatt* (1944), 143 Ohio St. 71 [28

O.O. 21]; *Cleveland* v. *Budget Comm.* (1977), 50 Ohio St. 2d 97 [ 4 O.O.3d 207]. The presumption in this case places upon appellant the burden of proving that DeLorean's presence at the board meeting improperly affected the board's decision. Appellant has failed to present any evidence indicating that DeLorean had any impact whatsoever on the board's decision. In fact in its brief, appellant concedes:

"The record does not reflect whether or not Mr. DeLorean participated in the deliberations. It does not show he did not. The Motor Vehicle Dealers Board's decision does not indicate one way or the other."

The record does show that DeLorean publicly acknowledged his possible bias and disqualified himself from voting in the case. This being the only evidence before this court, we must assume that the board's decision was not affected by DeLorean's presence at the meeting.

Accordingly, the judgment of the court of appeals on this issue is affirmed.

### III

The final issue before this court is whether R.C. 119.12 requires the court of common pleas to conduct an oral hearing on an appeal from an agency adjudication. R.C. 119.12 states in pertinent part:

"Any party adversely affected by any order of an agency issued pursuant to an adjudication * * * may appeal * * * to the court of common pleas * * *."

"The court shall conduct a hearing on such appeal * * *. The hearing in the court of common pleas shall proceed as in the trial of a civil action * * *. At such hearing counsel may be heard on oral argument, briefs may be submitted, and evidence introduced if the court has granted a request for the presentation of additional evidence. * * *"

R.C. 119.12 requires only a hearing. The hearing may be limited to a review of the record, or, at the judge's discretion, the hearing may involve the acceptance of briefs, oral argument and/or newly discovered evidence. In the instant case, neither party requested that the judge hear oral arguments or objected when none were heard. The court properly exercised its discretion and limited the hearing to a review of the administrative proceedings.

Accordingly, the judgment of the court of appeals on this issue is affirmed.

*Judgment accordingly.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.