**PARKER, Appellant,**

**v.**

**OHIO STATE RACING COMMISSION et al., Appellees.**

[Cite as *Parker v. Ohio State Racing Comm.* (1998), 128 Ohio App.3d 575.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 97CA006830.

Decided June 24, 1998.

576

*Joseph D. Weisberg,* for appellant.

*Betty D. Montgomery*, Attorney General, and *James H. Harrison*, Assistant Attorney General, for appellee Ohio State Racing Commission.

---

REECE, Judge.

Appellant Ted Parker appeals from the judgment of the Lorain County Court of Common Pleas affirming a decision of the Ohio State Racing Commission. We affirm.

I

Parker is the part owner of a horse named Baroque Bogart. In 1996, Parker entered Baroque Bogart in a series of harness races called the Ohio Sires Stakes. The horses participating in the Ohio Sires Stakes compete in several races, or legs, held at various racetracks in Ohio. The horses are awarded purse money and points based on where they finished in the races; the points and purse money won determines the horses that will race in the finals of the Ohio Sires Stakes. Doing well in the Ohio Sires Stakes could enhance a horse's value for breeding purposes.

The first leg of the 1996 Ohio Sires Stakes was run on June 28, 1996, at Scioto Downs Racetrack, near Columbus, Ohio. Because a large number of horses were competing in the first leg, three separate heats, or divisions, were run. Baroque Bogart and eight other horses were to compete in the third division. The first two divisions were run without incident. Just after the start of the third division race, one of the horses, Courageous Becky, bumped into the horse on the inside lane, Topaz Sahbra, causing Topaz Sahbra's driver to be unseated. Topaz Sahbra then ran loose in the infield of the track. The remaining horses were not directly affected by the incident, and track employees attempted to control Topaz Sahbra. As the remaining horses came down the homestretch, Baroque Bogart was in second place. At that time, Topaz Sahbra ran away from the track employees, onto the track, and straight toward the oncoming horses. The drivers maneuvered their horses to avoid a head-on collision with Topaz Sahbra. The driver of the lead horse pulled up to be able to ride the inside lane without collision. As a result, Baroque Bogart crossed the finish line first.

Immediately after the conclusion of the race, the judges supervising the races at Scioto Downs conferred and unanimously agreed that the outcome of the race was affected by Topaz Sahbra. As a result, the judges declared the race "no contest," as if the race had never been run. Parker appealed the judges' decision to the Ohio State Racing Commission. A hearing was held before a hearing examiner, who upheld the decision of the judges.

Under R.C. 3769.085, the Ohio Sires Stakes is administered by the Ohio Standardbred Development Commission, in conjunction with the Racing Commission. The Development Commission awards the purse money and points from the races. After the race at issue was declared no contest, the Development Commission met to decide how to resolve the situation. The Development Commission considered rescheduling the race, but all potential dates for rescheduling the race involved a conflict with at least one of the horses, precluding that horse's participation. As a result, the Development Commission decided to award an equal share of purse money and points (one-ninth) to each of the nine horses that competed in the race at issue, including Courageous Becky and Topaz Sahbra. The Development Commission's decision was on the Racing Commission's agenda for its July 24, 1996 meeting but was tabled until the next meeting because the hearing examiner had not yet issued his recommendations concerning the no contest ruling of the Scioto Downs judges.

Both the hearing examiner's recommendations and the Development Commission's decision were considered by the Racing Commission at its August 22, 1996 meeting. The members of the Racing Commission reviewed the videotape of the race and heard argument from counsel for Parker and the assistant attorney general for the Racing Commission. The Racing Commission accepted the hearing examiner's recommendation to uphold the no contest ruling of the Scioto Downs judges. After hearing further argument on the issue of purse money and points distribution, the Racing Commission also accepted the recommendation of the Development Commission and approved the equal division of purse money and points among the nine horses that participated in the third division of the first leg of the Ohio Sires Stakes.

Parker appealed both decisions of the Racing Commission to the Lorain County Court of Common Pleas.[1] The trial court affirmed the decision of Racing Commission as to the no contest ruling and as to the division of purse money and points. This appeal followed.

---

**1.** There is a question as to whether the Lorain County Court of Common Pleas was the proper forum for Parker to bring his appeal under the first two paragraphs of R.C. 119.12. Because the appeal does not involve Parker's license with the Racing Commission, it is possible that the appeal should have been brought in the Franklin County Court of Common Pleas. See *Welsh v. Ohio State Med. Bd.* (1959), 168 Ohio St. 520, 522, 7 O.O.2d 389, 389–390, 156 N.E.2d 740, 741–742 (the first paragraph of R.C. 119.12 applies to four types of adjudications: "(1) denial to an applicant of admission to an examination; (2) denial of the issuance or renewal of a license; (3) denial of the registration of a licensee; and (4) revocation or suspension of a license"); *Brown v. Ohio State Dental Bd.* (July 29, 1988), Trumbull App. No. 3954, unreported, 1988 WL 81287; *In re Suitability of Glowacki* (Aug. 7, 1981), Lucas App. No. L–81–007, unreported, 1981 WL 5740. Because neither party raised the issue, and in the interest of judicial economy, we will address the merits of Parker's appeal.

## II

Parker asserts five assignments of error. We consider each in due course.

## A

### First Assignment of Error

"The lower court failed to follow Local Rule 16 of the Lorain County Common Pleas Court entitled appeals to the court of common pleas, and more specifically Local Rule 16B entitled oral hearing."

In his first assignment of error, Parker asserts that the trial court improperly denied his motion for an oral hearing on his appeal. Parker twice moved for an oral hearing, but the trial court denied the motions. He argues that Loc.R. 16(B) of the Lorain County Court of Common Pleas mandated an oral hearing in his case. Parker contends that he was prejudiced by the trial court's failure to allow an oral hearing and deprived of the opportunity to introduce additional evidence.

Loc.R. 16 of the Lorain County Court of Common Pleas governs appeals from administrative agencies under R.C. 119.12. Subsection (B) states: "Upon expiration of the above time limits [of the briefing schedule], the case will be considered submitted on the briefs, unless an oral argument is requested in writing." Parker believes that the rule is mandatory and that an oral hearing should have been held when he requested it.

We disagree with Parker's interpretation of the rule. First, no language appears to the effect that the trial court "shall" hold oral argument. The rule permits oral argument to take place if requested by a party. Nothing in the rule prohibits the trial court from denying the request. See, also, *Ohio Motor Vehicle Dealers Bd. v. Cent. Cadillac Co.* (1984), 14 Ohio St.3d 64, 67, 14 OBR 456, 459, 471 N.E.2d 488, 491–492 (nothing in R.C. 119.12 requires oral argument). The failure to hold oral argument, in and of itself, causes no prejudice.

Parker asserts that he was prejudiced because he would have presented additional testimony to support his position at an oral hearing. However, the right to adduce additional evidence is not automatic. Instead, a party seeking to introduce additional evidence in an administrative appeal must first demonstrate that "such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency." R.C. 119.12. We review the trial court's decision for an abuse of discretion. *N.R., Inc. v. Ohio Liquor Control Comm.* (1996), 113 Ohio App.3d 198, 207, 680 N.E.2d 703, 709. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delin-

quency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 751.

■ In his motions, Parker failed to meet either requirement, instead making general statements about his desire to introduce additional testimony. The trial court does not try administrative appeals *de novo. N.R., Inc.,* 113 Ohio App.3d at 207, 680 N.E.2d at 709. We find that the trial court did not abuse its discretion by not holding oral argument or receiving additional evidence. Parker's first assignment of error is overruled.

### B

In his four remaining assignments of error, Parker argues that the trial court erred by affirming the decision of the Racing Commission because the Racing Commission's decision is contrary to law and is not supported by the evidence. We afford each contention separate consideration.

■ We first note the appropriate standard of review. Appeals taken from an administrative agency's decision are governed by R.C. 119.12. "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record * * *, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." *Id.* "The common pleas court must give due deference to the administrative resolution of evidentiary conflicts and must not substitute its judgment for that of the administrative agency." *N.R., Inc.,* 113 Ohio App.3d at 202, 680 N.E.2d at 705. "Moreover, the reviewing court must give deference to the agency's interpretation of its own regulations." *Ladd v. Ohio Counselor & Social Worker Bd.* (1991), 76 Ohio App.3d 323, 333, 601 N.E.2d 617, 623. However, "[t]o the extent that an agency's decision is based on construction of the state or federal Constitution, a statute, or case law, the common pleas court must undertake its R.C. 119.12 reviewing task completely independently." *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 471, 613 N.E.2d 591, 595–596.

■ In reviewing a decision of a common pleas court that determines whether an agency's order is supported by reliable, probative, and substantial evidence, this court must determine whether the trial court abused its discretion. *Wise v. Ohio Motor Vehicle Dealers Bd.* (1995), 106 Ohio App.3d 562, 565, 666 N.E.2d 625, 627. "Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the [agency] or a trial court." *Pons,* 66 Ohio St.3d at 621, 614 N.E.2d at 751. "On questions of law, the common pleas court does not exercise discretion and the court of appeals' review is plenary." *McGee v. Ohio State Bd. of Psychology* (1993), 82 Ohio App.3d 301, 305, 611 N.E.2d 902, 904.

### Fourth Assignment of Error

"The Lorain County Common Pleas Court and the Ohio State Racing Commission failed to properly interpret regulation number 3769–12–05 and 3769–14–41A9 [*sic*] thus committing prejudicial error against appellant."

■ We first consider Parker's fourth assignment of error, wherein he argues that the trial court erred in affirming the Racing Commission's decision to uphold the no contest ruling of the Scioto Downs judges. One of the regulations cited by the Scioto Downs judges that permitted them to declare the race no contest was Ohio Adm.Code 3769–12–05:

"All harness racing in Ohio over which the commission has jurisdiction and supervision shall be conducted under the rules and regulations which the commission has set forth for such racing. If any case occurs which is not provided for in the rules of the Ohio state racing commission, the matter shall be determined by the judges or by the commission as the case may be."

Ohio Adm.Code 3769–14–41(A)(9) states: "It shall be the duty of the judges to * * * [d]eclare a dash or heat of a race no contest in the event the track is thrown into darkness during the progress of a race by an electrical malfunction." Parker argues that because no electrical malfunction threw the track into darkness during the race at issue, and no other provision specifically deals with a race being declared a no contest, the judges had no authority to call the race at issue no contest. We disagree.

As noted above, we give deference to the Racing Commission's interpretation of its own regulations so long as the interpretation is reasonable. Ohio Adm. Code 3769–14–41(A)(9) declares that if an electrical malfunction darkens the track during a race, the judges "shall" declare the race no contest and are without discretion to do otherwise. In Ohio Adm.Code 3769–12–05, the Racing Commission provided that the judges shall determine any matter not provided for in the rules and regulations. All parties concede that no rule or regulation squarely addresses the facts of the case at bar. Thus, it was within the judges' discretion to decide how to proceed. Based in part on Ohio Adm.Code 3769–12–05, the Racing Commission upheld the judges' decision to declare the race no contest. The decision of the Racing Commission and the judges is not contrary to Ohio Adm.Code 3769–14–41(A)(9). Parker's fourth assignment of error is overruled.

### Second Assignment of Error

"The Ohio State Racing Commission in its ruling of August 22, 1996 did not properly follow administrative regulation 3769–15–21(A2) [*sic*] which states '* * * that in elimination heats of stakes and futurities if one or more horses start the race, the race *must* (emphasis added) be raced, * * *' and that by

upholding the 'no-contest' ruling of the judges on June 28, 1996 and not reracing or rescheduling the race the Ohio State Racing Commission committed error."

 In his second assignment of error, Parker argues that the Racing Commission's decision violates Ohio Adm.Code 3769–15–21(A)(2). He contends that under that regulation, the commission was required to reschedule the race at issue. However, we find that the issue is moot. The 1996 Ohio Sires Stakes have been run in their entirety, and Baroque Bogart qualified to race in the finals. Even assuming *arguendo* that Parker's arguments concerning Ohio Adm.Code 3769–15–21(A)(2) are correct, we cannot order that the race be rescheduled and run almost two years later. Parker conceded as much in the trial court. Accordingly, Parker's second assignment of error is overruled as moot.

### Third Assignment of Error

"The recommendation for awarding purse money and sire stake points was contrary to administrative regulations (see 3769–17–15 and also 3769–11–20) and is thus contrary to law."

 In his third assignment of error, Parker argues that the trial court erred by affirming the Racing Commission's distribution of the purse money [2] from the race at issue. Parker contends that distributing one-ninth of the purse money to each participant was contrary to Racing Commission administrative regulations. We disagree.

Parker first argues that the distribution of purse money was contrary to Ohio Adm.Code 3769–17–15, which states: "If for any cause other than being interfered with or broken equipment, a horse fails to finish after starting in a heat, that horse shall be ruled out." Parker asserts that two of the nine horses failed to finish but were awarded one-ninth of the purse. Parker concludes that because these horses were ruled out, they should not have received any purse money at all.

Parker's argument might have some validity if the race at issue had not been declared no contest. However, that is not the case. As Parker himself frequently noted in his brief, when the Scioto Downs judges declared the race no contest, it was as if the race had never been run. More to the point, it is as if the accident between Topaz Sahbra and Courageous Becky had never occurred and as if Topaz Sahbra had never run toward the field down the homestretch. Since there never was a race, then none of the horses could have been ruled out of the

---

**2.** Parker also argues that the distribution of points from the race at issue was erroneous. However, this issue is also moot for the same reasons given in addressing the second assignment of error. Accordingly, that portion of the third assignment of error is also overruled.

race. The Racing Commission's decision was not contrary to Ohio Adm.Code 3769–17–15.

Parker next contends that the distribution of purse money was contrary to Ohio Adm.Code 3769–11–20, which states: "When only horses which are of a non-competing interest start in a race, it constitutes a 'walk over.' In a stake race a walk over is entitled to all the stake money and forfeits. To claim the purse the entry must start and go once over the course." Parker concedes that this regulation is not directly applicable, but he argues

"This rule would seem to indicate that even in a one (1) horse race in order to collect the money the horse *must* finish. If something happens such as the horse drops dead on the race track from a heart attack, etc., that horse could not collect the purse money. It would then stand to reason that based on [Ohio Adm.Code 3769–11–20] and the previously cited rule of [Ohio Adm.Code] 3769–17–15 that the two horses who did not finish the race on June 28, 1996 at Scioto Downs would not have been entitled to any purse money * * *." (Emphasis *sic*.)

Again, Parker's argument misapprehends the posture of the race at issue. Because the race was declared no contest, it is as if the race was never run. Because the race was never run, no horses finished the race, and no horses failed to finish the race. Thus, Topaz Sahbra and Courageous Becky were on an equal footing with the other horses, including Baroque Bogart. We find Ohio Adm. Code 3769–11–20 inapplicable to the case at bar.

Upon a review of the administrative regulations of the Racing Commission, it is immediately apparent that no rule or regulation directly addresses the distribution of purse money or stakes points when a race is declared no contest. Accordingly, under Ohio Adm.Code 3769–12–05, the matter was to be determined by the Racing Commission. We do not find the Racing Commission's resolution of the difficulties arising from the race at issue to be contrary to law. Parker's third assignment of error is overruled.

### Fifth Assignment of Error

In the fifth assignment of error, Parker contends that the commission's decision is not supported by the evidence. We disagree.

At the hearing before the Racing Commission hearing examiner, two of the judges who declared the race no contest testified that all of the horses were affected by Topaz Sahbra running head-on toward the remaining horses. One of the judges, a former driver and trainer of horses for thirty-five years, testified that he had seen other races declared no contest when accidents occurred. The witnesses were almost unanimous in that they had never before seen anything like what happened in the race at issue. Upon reviewing the entire record, including the videotape of the race at issue, we agree with the Scioto Downs

judges, the hearing examiner, the Racing Commission, and the trial court. Clearly and unequivocally, the outcome of the race was adversely affected by the actions of Topaz Sahbra, and the race should have been declared no contest. The trial court did not abuse its discretion by affirming the decision of the Racing Commission to uphold the declaration of no contest by the Scioto Downs judges. Parker's fifth assignment of error is overruled.

## III

All of Parker's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.