[Cite as *Cobb v. Ohio Dept. of Edn.*, 2016-Ohio-7396.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103694**

## ARIES COBB

PLAINTIFF-APPELLANT

vs.

## OHIO DEPARTMENT OF EDUCATION

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-845070

**BEFORE:** Laster Mays, J., Jones, A.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 20, 2016

**ATTORNEY FOR APPELLANT**

Paul A. Mancino, Jr.
Mancino Mancino & Mancino
75 Public Square Building, Suite 1016
Cleveland, Ohio 44113-2098

**ATTORNEY FOR APPELLEE**

Mike DeWine
Ohio Attorney General

By:   Reid T. Caryer
Ohio Assistant Attorney General
30 East Broad Street, 16th Floor
Columbus, Ohio 43215

ANITA LASTER MAYS, J.:

{¶1}    Plaintiff-appellant, Dr. Aries Cobb ("Dr. Cobb"), appeals the determination of the Cuyahoga County Common Pleas Court upholding the decision of the Ohio Department of Education ("ODE") permanently revoking her teaching licenses and declaring her to be permanently ineligible to apply for any Ohio Board of Education licenses.    For the reasons that follow, we affirm the judgment of the trial court.

I.    BACKGROUND AND FACTS

{¶2}    Dr. Cobb holds multiple teaching certificates and degrees, including a doctoral degree in Education for Instructional Technology Distance Education and a Master's Degree in education.    She has served as an educator for more than 20 years and previously possessed a pristine teaching record.

{¶3} Dr. Cobb is a certified assistive technology professional behavior therapist and the founder, director, and owner of Edu-at-Tech, L.L.C. ("Clinic"), a private clinic specializing in the provision of educational and intervention services to children with learning disabilities.    The Clinic is located on the westside of Cleveland and operates in what was formerly a two-family residence. Service providers visit the Clinic to provide therapy and otherwise administer to the needs of the children.

## A. Administrative Charges by the ODE

{¶4} On July 3, 2014, ODE issued a Notice of Opportunity for Hearing ("NOH") to Dr. Cobb relating to an incident occurring on July 23, 2013. The NOH stated that, as director of the Clinic, Dr. Cobb allowed two minors to take approximately 11 students to a public park without adult supervision: "The two minors returned to the school and forgot 'Student One,' a five-year-old with limited vocabulary skills. It was approximately 20 minutes until a staff member returned for the student."

{¶5} The NOH further stated that the incident violated R.C. 3319.31(B)(1), and the ODE intended to determine whether to limit, suspend, revoke, or permanently revoke her five-year professional pre-kindergarten teaching license and her five-year professional kindergarten license. Dr. Cobb requested a hearing in accordance with R.C. 119.12. The hearing was held on December 9, 2014, and she was represented by counsel.

## B. The Administrative Hearing.

{¶6} The sole witnesses at the hearing were Dr. Cobb and Arndt Detmers ("Detmers"), an independent witness, who observed the incident and telephoned the police. Limited documentary evidence was also introduced, including a copy of the dispatch report, a confidential list containing the student roster, and a copy of an unsigned permission slip that Dr. Cobb argued parents signed to allow service providers to administer services to the children. No written statements from any possible witnesses were submitted.

### 1. Testimony of Dr. Cobb

**{¶7}** After recounting her education, experience and the services provided by the Clinic, Dr. Cobb voiced her objections to the NOH charges. Dr. Cobb denied that the children attended the park without an adult, and maintained that the ODE should find that she was without fault.

**{¶8}** Dr. Cobb explained that Student One was not autistic but suffered from global learning disability, a term utilized where there is no medical explanation for why a child fails to pick up speech at a normal rate. Dr. Cobb began working with Student One via home visits in October 2012, and Student One began attending the Clinic in December 2012. Student One attended the Clinic for almost 1-1/2 years, until March 2014. During that time, Student One's communications skills expanded from repeating a single sound to a 50-word vocabulary, and Student One was able to express basic needs.

**{¶9}** The day of the incident, the students were participating in a summer camp at the Clinic with hours from 9:00 a.m to 1:00 p.m. Lunch was served at noon. After lunch, the students went to a playground area at a school located less than a block from the Clinic, referred to as the park ("Park"). The Clinic operated four vans, including one driven by Dr. Cobb. The Clinic vans served as transportation to and from the Clinic and for field trips. The students were typically picked up from the Park at 1:00 p.m. They were transported in a Clinic van. They were allegedly accompanied by Joshua Quinones ("Quinones"), 18 years of age, and two interns, a 17 year-old male, and 15 year-old female. The weather was sunny and dry at the time. Dr. Cobb stayed behind with a student who was not feeling well.

**{¶10}** Quinones had been trained at the Clinic to supervise children with special needs, and had taken the students to the Park on a number of occasions. Parents signed the Clinic handbook that authorized the children to attend field trips and go to the Park, and executed permission slips authorizing the interns to provide services to the students.

**{¶11}** The interns and students returned to the Clinic from the Park when it began to rain. Dr. Cobb was in the Clinic kitchen when the group returned, and Quinones was not with them. The van drivers were required to account for each person upon pick up, and call Dr. Cobb if there was a problem. Dr. Cobb had not been contacted by the driver. The interns were also trained to count the students prior to leaving the Park, and report to her upon return. At that point, Dr. Cobb did not know that Student One was missing.

**{¶12}** When Dr. Cobb learned that Student One and Quinones were missing, she and the male intern returned to the Park in her van. Dr. Cobb did not see Quinones, but did see Student One standing on the Park sidewalk, and placed the student in her vehicle. Student One was fine, and was not upset, stressed, or crying. Several other children, who were not affiliated with the Clinic, were also at the Park.

**{¶13}** Detmers approached Dr. Cobb's vehicle, and told her that the police had been called. Dr. Cobb voluntarily waited for their arrival. According to Dr. Cobb, the police arrived about 20 minutes later. Dispatch records show the police were notified at 2:07 p.m. and arrived at the park at 2:17 p.m. Dr. Cobb believed the time was incorrect.

**{¶14}** According to Dr. Cobb, police and EMS examined Student One, and opined that the child had not been outside in the rain long and was not soaking wet. They explained that, although they found nothing wrong with Student One, they were required to notify the county agency. Dr. Cobb confirmed that the incident was reported to the child services agency, and a finding was issued that neglect was substantiated.

**{¶15}** Dr. Cobb took Student One to the student's home, and explained the situation to the parent. The parent was not upset. Student One continued to attend the Clinic until March 2014, and continued to progress. Quinones was at work the next day. By the time of the hearing, Quinones had moved to Florida.

**{¶16}** Dr. Cobb rejected the suggestion Detmers had taken Student One under cover which was why the student was not very wet. Dr. Cobb reiterated that: (1) Student One was standing near the sidewalk when she arrived, (2) she picked the student

up and placed the student in the van, (3) there were several other children in the area, and (4) she did not see Detmers until he walked up to her van.

{¶17} Since the parents had signed the Clinic handbooks and permission slips, Dr. Cobb believed that the signatures constituted written consent for the interns to supervise the students in the provision of Clinic services, such as attending the Park. The handbook information was not produced. Dr. Cobb stated she could access the electronic version of the handbook using the laptop she brought to the hearing, but counsel for the ODE did not ask to see it and it does not appear that it was proffered for the record.

### 2. Arnold Detmers

{¶18} The sole witness for the ODE was Detmers. His testimony varied in several areas from that of Dr. Cobb.

{¶19} Detmers was employed by the Positive Education Program as an assistant teacher and counselor, and was pursuing a master's degree in education. Detmers had nine years of experience working with special needs children. He resided across the street from the Park, and was painting his porch when he saw the students arrive. Detmers determined that there were 11 students supervised by two individuals who looked like minors. Contrary to Dr. Cobb's testimony, he did not see a third person supervising the children.

{¶20} Detmers's attention was attracted by the "odd, grunting sounds" made by Student One. He assumed the child was autistic. Detmers observed the student

climb to the top of the sliding board ("Slide"), which had a top platform with three tall panels impeding the view of the platform, but it did not have a roof.

{¶21} Detmers saw the group leave the Park in a vehicle as it began to rain. Detmers then observed Student One slide down the Slide, and sit at the bottom. Detmers crossed the street toward the Park, and had his son bring an umbrella. Student One did not welcome Detmers approach, and climbed back up the Slide. Detmers summoned the police.

{¶22} Detmers waited with Student One until EMS arrived, and both he and Student One were soaked by the heavy rainfall. At some point, he saw Dr. Cobb's van in front of his home. Detmers did not recognize Dr. Cobb as the individual driving the van, but recalled the presence of the intern. He did remember having a "heated exchange" with the woman driving the van.

{¶23} Detmers did not recall the presence of other children at the park. Detmers admitted that Student One may have been intimidated by his 6-foot, 8-inch height.

### 3. Conclusion

{¶24} In closing, the ODE referenced the conflicting testimony and greater credibility of its evidence. The ODE found Dr. Cobb's "blase attitude outright disturbing" and offered that she could never be trusted again with school children. Dr. Cobb's counsel rejected the ODE's assessment as well as the harshness of the recommended penalty.

## C. Report and Recommendation of Hearing Officer

**{¶25}** The hearing officer issued a 30-page Report and Recommendation ("Report") on January 20, 2015. The Report cited as aggravating factors pursuant to Ohio Adm.Code 3301-73-21(B)(1): (1) the nature and seriousness of the misconduct, specifically "allowing minors to supervisor approximately 11 students at a public park without an adult present to supervise, which resulted in a student, who appeared to be autistic, being left in the park," and (2) the negative impact that Dr. Cobb's licensure would have on the health, safety, and welfare of the school community. The mitigating factor pursuant to Ohio Adm.Code 3301-73-21(B)(11) was that Dr. Cobb had no prior history of misconduct or discipline. The final recommendation was that the ODE "permanently revoke Respondent's licenses" pursuant to R.C. 3391.31(B)(1) and Ohio Adm.Code 3301-73-22(A)(2)(b).

## D. Objections to Report

**{¶26}** Dr. Cobb argues that she filed objections to the Report pursuant to R.C. 119.09. ODE denies receipt of the objections so the objections were not part of the record considered by the ODE in reaching a final determination. In the appeal to the common pleas court, the trial court denied Dr. Cobb's motion to supplement the record with the objections that ODE claimed were never filed.

## E. ODE Resolution

**{¶27}** The ODE adopted the findings via the resolution issued on April 16, 2015:

> RESOLVED, That the State Board of Education, pursuant to Ohio Revised Code 3319.31(B)(1), hereby REVOKES Aries N. Cobb's five-year

professional pre-kindergarten teaching license issued in 2009 and five-year professional kindergarten through primary teaching license issued in 2009 based upon Ms. Cobb, while employed as the director of Edu-at-Tech, LLC, allowing two minors to take approximately 11 students to a public park on or about July 23, 2013 without any adult supervision. The two minors returned to the school and forgot a special needs student on the playground. Further, the State Board, in accordance with Ohio Administrative Code Rule 3301-73-22(A)(2)(b), orders Aries N. Cobb be permanently ineligible to apply for any license issued by the State Board of Education; and, Be It Further

RESOLVED, That the State Superintendent of Public Instruction be, and he hereby is, directed to notify Ms. Cobb of this action.

**{¶28}** Dr. Cobb appealed to the Cuyahoga County Common Pleas Court. The trial court affirmed the ODE on the briefs, without a hearing and without opinion. The instant appeal followed.

## II.    SCOPE OF REVIEW FOR ADMINISTRATIVE APPEALS

**{¶29}** The administrative appeals standard of review for the common pleas court is prescribed by the statute:

The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

R.C. 119.12. *Tsiperson v. Ohio Dept. of Commerce Div. of Fin. Insts.*, 8th Dist. Cuyahoga No. 96917, 2012-Ohio-1048, ¶ 22.

**{¶30}** This court explained in *Tsiperson* that, while the trial court examines the record in its entirety, including any evidence it elects to admit, the inquiry for the trial

court is whether the order is supported by reliable, probative and substantial evidence and is in accordance with law. *Id.* However, an appellate court is to determine only whether the trial court abused its discretion. *Id.* at ¶ 23, citing *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 1993-Ohio-122, 614 N.E.2d 748. *Bellante v. Ohio Dept. of Commerce Dept. of Fin. Insts.*, 8th Dist. No. 86712, 2006-Ohio-2472, ¶ 24.

{¶31} The exception to the abuse of discretion standard is where the issue posed on appeal involves a question of law, upon which this court has plenary review:

> R.C. 2505.01(A)(2) defines an appeal on questions of law as a review of a cause upon questions of law, including the weight and sufficiency of the evidence. Thus, although the appeal to the appellate court is as to questions of law, it will necessarily involve a review of the evidence to determine whether the common pleas court applied the correct standard of review.

*Zingale v. Ohio Casino Control Comm.*, 8th Dist. Cuyahoga No. 101381, 2014-Ohio-4937, ¶ 25.

## III. ASSIGNMENTS OF ERROR

{¶32} Dr. Cobb proffers four assignments of error:

I.      Appellant was denied due process of law when the court, in a perfunctory ruling, affirmed the order of the State Board of Education.

II.      Appellant was denied due process of law when the Board of Education permanently revoked her teaching certificates.

III.      Appellant was denied due process of law when her licences were permanently revoked under an unconstitutional statute.

IV.      Appellant was denied due process of law when  objections to the report of the hearing officer were not submitted to the Ohio Department of Education for its consideration.

## IV. LAW AND ANALYSIS

## A.     Procedural Due Process Violations

**{¶33}**   We combine Dr. Cobb's first and second assigned errors for purposes of judicial economy.   The gravamen of Dr. Cobb's argument is that, in violation of Dr. Cobb's due process rights, the hearing officer, ODE and trial court failed to properly consider the ODE's disciplinary guidelines in deciding whether suspension, revocation, or denial was appropriate.   According to Dr. Cobb, Ohio Adm.Code 3301-73-21 provides that the ODE may impose discipline outside of the guidelines only after considering aggravating and mitigating factors listed in the code section, a process that Dr. Cobb asserts did not occur in this instance.   Thus, the resulting discipline was not in accord with ODE procedures.   We find this argument to be without merit.

**{¶34}**   The ODE determined that Dr. Cobb's behavior constituted conduct unbecoming her position as a teacher, and negligence based on R.C. 3319.31(B)(1) and Ohio Adm.Code 3301-73-22(A)(2)(b). R.C. 3319.31(B)(1) provides:

> For any of the following reasons, the state board of education, in accordance with Chapter 119. and section 3319.311 of the Revised Code, may refuse to issue a license to an applicant; may limit a license it issues to an applicant; may suspend, revoke, or limit a license that has been issued to any person; or may revoke a license that has been issued to any person and has expired:
>
> (1)   Engaging in an immoral act, incompetence, negligence, or conduct that is unbecoming to the applicant's or person's position.

**{¶35}**   Ohio Adm.Code 3301-73-22(A)(2)(b) further elaborates on the statute:

> (A)     The state board, in accordance with Chapter 119. and section 3319.311 of the Revised Code, may suspend, revoke or deny a license as specified in paragraph (A) of this rule.

*       *       *

(2)  After revoking a license, the state board shall impose one of the conditions described in paragraphs (A)(2)(a) and (A)(2)(b) of this rule. A revoked license will not be reinstated.

*       *       *

(b)  The state board may order that the respondent whose license has been revoked shall be permanently ineligible to apply for any license issued by the state board and that the respondent shall no longer be permitted to hold any position in any school district in the state that requires a license issued by the state board.

{¶36}  Ohio Adm.Code 3301-73-21(A) sets forth factors to be considered when evaluating conduct unbecoming an educator.  The hearing officer determined that three of the factors were applicable in this case:

(1) Crimes or misconduct involving minors;

(2) Crimes or misconduct involving school children;

*       *       *

(8) Any other crimes or misconduct that negatively reflects upon the teaching profession, including sanctions and/or disciplinary action by another state educational entity or another professional licensing board or entity.

{¶37}  In affirming the application of the listed subsection in this case, the Report states that:

Respondent's conduct in allowing two minors to supervise approximately eleven students on an outing to a public park, which resulted in [Student One], a five-year-old special needs child, being left behind at the park unsupervised by anyone for approximately 45 minutes to an hour, constitutes conduct involving a minor school child and misconduct that negatively reflects upon the teaching profession.

Report at ¶ 22.

{¶38} The Report also finds that Dr. Cobb's behavior was violative of Principle 2(g) of the *Licensure Code of Professional Conduct for Ohio Educators*, adopted by the ODE Board in 2008 ("ODE Code"),[1] where conduct unbecoming includes the failure "to provide appropriate supervision of students within the scope of the educator's official capacity, which risks the health, safety and welfare of students or others in the school community." *Id.* On this element, the Report states:

> Respondent's failure to provide adult supervision of [Student One], a five-year-old special needs child, in a public park constitutes a failure to provide appropriate supervision of a student within the scope of her official capacity as director of Edu-at-Tech and which risked Student One's health, safety, and welfare when he was left alone at the park for 45 minutes to one hour.

*Id.* Not only was the conduct unbecoming, the Report provides that Dr. Cobb's conduct was negligent, which formed another basis for suspension, revocation, or limitation of the licenses under R.C. 3319.31(B)(1).

{¶39} Further relative to the conduct unbecoming analysis, the Report documents the ODE's contemplation of the aggravating and mitigating factors in this case:

---

[1] "R.C. 3319.31 delegated the responsibility of regulating licensure to the Board, and the Board adopted rules pursuant to statute in the form of the Licensure Code. * * * [I]t was reasonable and consistent with the court's decision to determine whether the teacher's conduct at issue was unbecoming with reference to the Licensure Code and the Ohio Administrative Code." *Orth v. State,* 10th Dist. Franklin No. 14AP-19, 2014-Ohio-5353, ¶ 17.

Aggravating factors in the instant matter include the nature and seriousness of Respondent's misconduct and the negative impact that Respondent's licensure will have on the health, safety, and welfare of the school community. Respondent allowed two minors to supervise approximately eleven students on an outing to a public park without adult supervision. The students were children with disabilities and children awaiting a diagnosis of a disability. Student One, who was left behind at the park unsupervised for 45 minutes to one hour, was approximately five years old and a special needs child whose verbal communication skills were limited to single words. Respondent did not obtain written permission from Student One's parents that specifically addressed interns taking student on an outing to a park. These factors demonstrate that Respondent's misconduct was serious and that her continued licensure would have a negative impact on the health, safety and welfare of the school community. Ohio Adm.Code 3301-73-21(B)(1), (10).

Report at ¶ 23.

**{¶40}** The Report's conclusions of law states that the ODE had established by a preponderance of the evidence that Dr. Cobb violated R.C. 3319.31(B)(1). The hearing officer reiterated the presence of the aggravating factors under Ohio Adm.Code 3301-73-21(A)(1), (2), and (8), and observed that the sole mitigating factor was that Dr. Cobb has had no record of misconduct or discipline. *See* Ohio Adm.Code 3301-73-21(B)(11).

**{¶41}** Although we believe that permanent revocation of Cobb's license was a harsh sanction for an initial infraction, we cannot substitute our judgment for that of the trial court. It is clear beyond dispute that the ODE fully and appropriately contemplated the applicable statute, rules, and regulations in reaching a determination. Thus, we do not find that Dr. Cobb's procedural due process rights were violated.

**{¶42}** As to Dr. Cobb's argument that the trial court erred in reaching a determination based on a "perfunctory" ruling, because it reached its determination without holding a hearing, the hearing protocol is at the discretion of the court:

> Courts interpreting this portion of R.C. 119.12 have determined that an appellant before the trial court is entitled to a hearing and that this hearing is mandatory. *See Ohio Motor Vehicle Dealers Bd. v. Central Cadillac Co.*, 14 Ohio St.3d 64, 67, 471 N.E.2d 488, 492 (1984). In *Central Cadillac*, the Ohio Supreme Court stated that "R.C. 119.12 requires only a hearing. The hearing may be limited to a review of the record, or, at the judge's discretion, the hearing may involve the acceptance of briefs, oral argument and/or newly discovered evidence. \* \* \*" *Id.* The hearing in the instant case was "upon consideration of the entire record," and thus the hearing mandated by the statute was held. The court was not required, as Dr. Geroc contends, to have the parties present oral or written arguments. *Central Cadillac, supra.*

*Geroc v. Ohio Veterinary Med. Bd.*, 37 Ohio App.3d 192, 197, 525 N.E.2d 501 (8th Dist.1987).

**{¶43}** Further, as to the summary nature of the common pleas entry:

> [A] trial court does not err in failing to make separate findings of fact and conclusions of law in an appeal from an administrative adjudication pursuant to R.C. 119.12, if the court did not hear additional evidence which was not originally before the state board. *Rashid v. Ohio Liquor Control Comm.*, 50 Ohio App.3d 32, 552 N.E.2d 663 (5th Dist. 1988); *Huntsman v.*

*Ohio State Bd. of Edn.*, 5th Dist. Stark No. 2008CA00220, 2009-Ohio-4282, ¶26.

*Link v. Ohio State Bd. of Edn.*, 5th Dist. Knox No. 13CA19, 2013-Ohio-4229, ¶ 19. *See also GMC v. Joe O'Brien Chevrolet*, 118 Ohio App.3d 470, 479, 693 N.E.2d 317 (10th Dist.1997).

**{¶44}** We find that the trial court did not abuse its discretion in affirming the findings of the ODE. *Tsiperson*, 8th Dist. Cuyahoga No. 96917, 2012-Ohio-1048, ¶ 22. Dr. Cobb's first two assignments of error are without merit and are overruled.

## B. Constitutionality of Statute

**{¶45}** Dr. Cobb's third assigned error is that R.C. 3319.31 is unconstitutionally vague, and serves as an improper and unconstitutional delegation of legislative authority to the State Board of Education. We disagree.

**{¶46}** The prohibitions of R.C. 3319.31(B)(1) are supplemented by portions of the Ohio Administrative Code, such as Ohio Adm.Code 3301-73-21 and 3301-73-22, as well as the Licensure Code:

> The critical question in all cases is whether the law affords a reasonable individual of ordinary intelligence fair notice and sufficient definition and guidance to enable him to conform his conduct to the law; those laws that do not are void for vagueness.

*Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 86. The Ohio Administrative Code and Licensure Code provide specific instances of behaviors constituting conduct unbecoming and negligence, as well as sets forth the range of

potential penalties, putting an educator of ordinary intelligence on notice that the cited behavior has legal repercussions and the scope of repercussions. *Id.*

**{¶47}** We further concur with the salient analysis of our esteemed sister court, the Lucas County Court of Appeals, in finding that the ODE had authority to impose the revocation and permanent ineligibility penalties under R.C. 3319.31(B). In *Haynam v. Ohio State Bd. of Edn.*, 6th Dist. Lucas No. L-11-1100, 2011-Ohio-6499, the appellant argued that Ohio Board of Education ("Board"), which falls under the auspices of the ODE, lacked authority to permanently revoke a permit, and barred the appellant from applying for any license issued by the Board.

**{¶48}** The court discussed the Board's authority:

R.C. 3319.31(G) unambiguously delegates broad rule-making authority to the Board over sanctions. The reference to adopting rules "to carry out this section" indicates a legislative anticipation that the Board would create rules in furtherance of the very subject-matter covered by subsection (B), i.e., punitive action that refuses, limits, suspends, or revokes a teaching license based upon specified misconduct, conviction of certain offenses, or both. Ohio Adm.Code 3301-73-22 distributes in measured degrees the sanctions for which punitive authority is explicitly provided in R.C. 3319.31(B). It tailors those sanctions from less severe to most severe: from denying, suspending or revoking a license for a temporary period, with conditions before reapplication, to revoking or denying a license permanently. Ohio Adm.Code 3301-73-22 merely takes the statutory sanctions "may refuse" and "may revoke" and defines their scope for the Board's use on a case-by-case basis, as befits the exercise of discretion. *[State ex rel.] Poignon [v. Ohio Bd. of Pharm.*, 10th Dist. Franklin No. 03AP-178, 2004-Ohio-2709]. Here Ohio Adm.Code 3301-73-22 (A)(2)(b) allows the Board to impose permanent ineligibility after revoking an existing teaching license, while Ohio Adm.Code 3301-73-22 (A)(3)(b) allows it to order permanent ineligibility after denying an application for one.

*Id.* at ¶ 52.

**{¶49}** The *Haynam* court further elucidated on the punitive authority granted under R.C. 3319.31:

> [I]n R.C. 3319.31(B), "an express power" is conferred on the Board to impose, within its discretion, one of several sanctions on teaching licenses. Then, in R.C. 3319.31(G), rule-making authority is expressly granted to the Board "to carry out" that power. The import of this express authority is to implement a statute that speaks in direct punitive terms of sanctions against licensure. A power is impliedly vested in an administrative agency if it is "incidental" to the express power. [*State ex rel. A. Bentley & Sons Co. v.*] *Pierce*, [96 Ohio St. 44,] 47,[117 N.E. 6 (1917)]. The permanent ineligibility components of Ohio Adm.Code 3301-73-22(A)(2)(b) and (A)(3)(b) are merely incidental to the express authority already conferred in R.C. 3319.31(B) to refuse or revoke teaching licenses.
>
> Having been adopted pursuant to R.C. 3319.31(G), Ohio Adm.Code 3301-73-22 is thus a valid administrative rule.

*Id*. at ¶ 60-61.

**{¶50}** The third assigned error is overruled.

**C.** **Objections to the Report of the Hearing Officer**

**{¶51}** Dr. Cobb's final assignment of error offers that the ODE and trial court's refusal to accept the Objections to the Report submitted pursuant to R.C. 119.09 violated her due process rights. Once again, we disagree.

**{¶52}** R.C. 119.09 is quite clear that the Objections must be "filed with the agency" within ten days of receipt of the Report. The definition of "filing" is expressly defined in Ohio Adm.Code 3301-73-20(C). The rule provides that a document is filed "when it is received and time stamped by the department during normal business hours." *Id.* Dr. Cobb failed to follow the rule. Instead, Dr. Cobb offers that the Objections were mailed to the assistant attorney general who served as legal counsel for the ODE at

the hearing, and suggests that, in spite of the clear language as to what constitutes proper filing, the assistant attorney general should have forwarded the Objections to the agency.

{¶53} Notwithstanding the express filing provision, Dr. Cobb has advanced no evidence supporting the timely or actual receipt of the Objections by the assistant attorney general. Further, while written objections may be filed under R.C. 119.09, it has been observed that:

> Nothing in the language of R.C. 119.09 or in 119.12, which governs appeals to the court of common pleas, indicates that a party must file objections or that failure to do so operates as a waiver of certain issues on appeal.

> Likewise, * * * the Board has cited no cases, and we have found none, standing for the proposition that failure to file written objections to a hearing examiner's report operates as a waiver of matters otherwise litigated during the evidentiary hearing held under R.C. 119.09.

*Harrison v. Ohio Veterinary Med. Licensing Bd.*, 10th Dist. Franklin No. 00AP-254, 2000 Ohio App. LEXIS 5943, at *19 (Dec. 19, 2000).

{¶54} The arguments set forth in the excluded Objections were substantively submitted to the common pleas court, with a copy attached to appellant's lower court brief on appeal, as well as this court in the instant appeal. Therefore, Dr. Cobb has not been prejudiced thereby. The final assignment of error is overruled.

## V.   CONCLUSION

{¶55}    The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

LARRY A. JONES, SR., A.J., and
EILEEN A. GALLAGHER, J., CONCUR